287 F.3d 1193
 Shannon HALLETT; Yvonne Wood; Gail Ray; Cindy Stewart; Rena Skilton, Plaintiffs-Appellants,
v.
Donna MORGAN, Health Care Manager, in her official and individual capacities, and Belinda Stewart, Superintendent, Washington Corrections Center for Women, in her official capacity, and their officers, agents, employees, and successors; and Alice Payne, in her individual capacity, Defendants-Appellees.
 No. 00-35098.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted January 8, 2002.
 Filed April 26, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Patricia J. Arthur, Columbia Legal Services, Seattle, WA, Katrin E. Frank, MacDonald Hoague & Bayless, Seattle, WA, David C. Fathi, ACLU Nat. Prison Project, Washington, DC, Aaron H. Caplan, ACLU of Washington, Seattle, WA, for the plaintiffs-appellants.
 Carol A. Murphy and Wm. Andrew Myers, Assistant Attorneys General, Olympia, WA, for the defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington, Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-93-05496-FDB.
 Before THOMAS, GRABER, and GOULD, Circuit Judges.
 OPINION
 GRABER, Circuit Judge.
 
 
 1
 Plaintiffs, who are a class of prisoners at the Washington Corrections Center for Women (the Prison), brought this action in 1993 to challenge conditions of their confinement. Defendants, who are current and former prison officials, entered into a consent decree with Plaintiffs governing the quality and availability of medical, dental, and mental health services at the Prison. Under the terms of the parties' agreement, the decree was to expire on January 12, 1999, unless timely extended. In 1998, Plaintiffs moved to extend jurisdiction over the consent decree for an additional period of time. Plaintiffs also moved, twice, to have Defendants held in contempt for past violations of the consent decree and moved to compel discovery. The district court denied all of Plaintiffs' motions, and it granted a motion brought by Defendants to terminate the consent decree.
 
 
 2
 We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we hold: (a) The district court properly limited the scope of the evidentiary hearing to the dental and mental health provisions of the consent decree, because Plaintiffs failed to give timely notice of their intent to seek extension of any other provisions. (b) The prospective-relief provisions of the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626, apply to Plaintiffs' motion to extend the decree. (c) Based on the district court's findings of fact, which are not clearly erroneous, the conditions of confinement at the Prison do not violate the Eighth Amendment and, therefore, the PLRA mandates that the motion to extend the decree be denied. (d) In light of this ruling, Defendants' motion to terminate the consent decree is moot. (e) In response to Plaintiffs' first contempt motion, the district court did not abuse its discretion in finding that Defendants had substantially complied with the dental and mental health provisions of the consent decree. However, the court improperly declined to consider whether Defendants had substantially complied with the other health care provisions, because the entire consent decree was still in effect when Plaintiffs filed their motion.[1] (f) Plaintiffs are not entitled to a reversal based on the district court's denial of their discovery motion, because they suffered no prejudice.
 
 FACTUAL AND PROCEDURAL HISTORY
 
 3
 This appeal represents the culmination of a long sequence of disputes and compromises between the parties. Plaintiffs filed this class action in 1993, alleging that health care at the Prison violated the Eighth Amendment. On January 12, 1995, the district court approved the parties' Stipulation and Judgment (Judgment), which resolved Plaintiffs' claims and required Defendants to implement a number of changes in the Prison's health care policies. The parties also agreed to a system of independent monitoring. Under the terms of the Judgment, the district court's jurisdiction was to terminate automatically on January 12, 1999. However, the Judgment also contained a procedure for extending the court's jurisdiction beyond that date.
 
 
 4
 As the expiration date of the Judgment approached, Plaintiffs sought to extend it for an additional four years. They alleged that Defendants had not substantially complied with the Judgment with respect to medical, dental, and mental health services. Defendants responded by arguing that Plaintiffs had not complied with the notice provisions of the Judgment and that any extension of the district court's jurisdiction would violate the prospective-relief provisions of the PLRA.
 
 
 5
 The district court provisionally changed the expiration date of the Judgment to February 12, 1999, anticipating that this extension would give the court enough time to review the merits of Plaintiffs' motion to extend jurisdiction. When it became apparent that more time was necessary, the court again extended jurisdiction over the Judgment until it could enter a final order resolving the parties' dispute.
 
 
 6
 On February 11, 1999, the district court granted Plaintiffs' motion for an evidentiary hearing, but it also held that the prospective-relief provisions of the PLRA would apply. The same day, Defendants filed a motion in the alternative for an order terminating the Judgment pursuant to § 3626(b) of the PLRA. Plaintiffs responded on February 22, 1999, with a motion for contempt alleging that Defendants had failed to substantially comply with the terms of the Judgment.
 
 
 7
 The court held a two-week evidentiary hearing on Plaintiffs' motion to extend jurisdiction. Because it found that Plaintiffs had complied with the Judgment's notice requirements only with respect to mental health and dental services, the court limited the scope of the hearing to those topics.
 
 
 8
 After weighing the voluminous record and the testimony offered at the hearing, the court concluded that Plaintiffs were not entitled to an extension of the Judgment. It held that Plaintiffs had not demonstrated that the quality and availability of mental health and dental care services at the Prison fell below Eighth Amendment standards and that, therefore, the prospective-relief provisions of the PLRA barred the court from granting Plaintiffs' motion. The court also denied Plaintiffs' motion for contempt and their motion to compel discovery. Finally, the court granted Defendants' motion to terminate the Judgment pursuant to § 3626(b) of the PLRA.
 
 
 9
 Plaintiffs filed a timely notice of appeal and a motion for injunctive relief. We granted the motion and issued an order reinstating the Judgment pending resolution of this appeal.
 
 
 10
 Plaintiffs then filed a second motion for contempt. The district court held that, pursuant to the orders issued by this court, it lacked jurisdiction to entertain Plaintiffs' motion.
 
 DISCUSSION
 
 11
 A. Scope of the Evidentiary Hearing on Extension of the Judgment
 
 
 12
 The terms of the Judgment govern the timeliness of motions to extend the district court's jurisdiction. The proper scope of the evidentiary hearing on extension is therefore a question of law to be reviewed de novo. Gates v. Gomez, 60 F.3d 525, 530 (9th Cir.1995). However, we must also "`give deference to the district court's interpretation[of the Judgment] based on the court's extensive oversight of the decree from the commencement of the litigation to the current appeal.'" Id. (quoting Officers for Justice v. Civil Serv. Comm'n, 934 F.2d 1092, 1094 (9th Cir. 1991)). That principle applies here, where the same judge has overseen this litigation since 1994.
 
 
 13
 Under the terms of the Judgment, the district court's continuing jurisdiction was to expire on January 12, 1999, unless extended in the manner established by the Judgment itself:
 
 
 14
 This Court has continuing jurisdiction to enforce the terms of this Stipulation and Judgment for four years following the date of its entry by this Court. Except as provided below, at the conclusion of this period the Court's jurisdiction shall terminate, this Stipulation and Judgment shall be vacated, and this case shall be dismissed.
 
 
 15
 As noted, the date of entry of the Judgment was January 12, 1995. The procedure for extending the court's jurisdiction was specific:
 
 
 16
 1. By no later than three years following the date of entry of this Stipulation and Judgment, Plaintiffs shall serve upon Defendants written notice of their intent to seek an extension; and
 
 
 17
 2. In the written notice described in paragraph (1) above, Plaintiffs shall identify with particularity the areas in which they allege Defendants have not substantially complied with the conditions of this Stipulation and Judgment[.]
 
 
 18
 Thus, Plaintiffs had only until January 12, 1998, to provide Defendants with written notice of their intent to file a motion to extend jurisdiction.
 
 
 19
 The district court did not err when it ruled that Plaintiffs complied with that notice procedure only as to some of the claims that they now seek to raise. Although Plaintiffs did give timely and sufficient notice of their intent to seek an extension of the mental health and dental provisions of the Judgment, they failed to do so with respect to the provisions governing other medical services at the Prison. Plaintiffs' counsel sent a letter to Defendants on December 16, 1997, which read in part: "[P]laintiffs plan to ask the court to extend jurisdiction as allowed under the decree. We believe that defendants are not yet in compliance with the mental health and dental portions of the decree and that additional time is required to monitor those areas." (Emphasis added.) The following day, Plaintiffs' counsel sent a second letter:
 
 
 20
 In the letter I sent to you yesterday I inadvertently omitted the words "at least" before describing the areas of non-compliance on which plaintiffs will base an extension of jurisdiction motion. What I intended to say is that plaintiffs believe that defendants are not in compliance with at least the dental and mental health portions of the Hallett decree.
 
 
 21
 We are presently reviewing the documents you recently sent, talking to clients, and may engage expert(s) on the question of compliance in all areas of the decree. In January we plan to provide you with more specific notice of plaintiffs' areas of concern, which we now know will include, at a minimum, dental and mental health. And we anticipate at this time seeking an extension of court jurisdiction over the decree.
 
 
 22
 Contrary to the assurance in the second letter, Plaintiffs did not provide Defendants with more specific notice of areas of concern until after the period for timely notice had expired.
 
 
 23
 The Judgment required Plaintiffs to "identify with particularity" the alleged deficiencies in Defendants' compliance. As the district court explained, the words "at least" were simply "not sufficient to put defendants on notice with particularity of any areas in addition to mental health and dental care in which plaintiffs were alleging that defendants had not complied with the conditions of the 1995 Stipulation and Judgment." Neither did the bare promise of more detail in the future suffice to substitute for actual timely detail.
 
 
 24
 Plaintiffs offer four reasons why the notice sufficed with respect to all areas of health care covered by the Judgment, and not just mental health and dental care. None persuades us.
 
 
 25
 First, they argue that Defendants had constructive notice of the additional areas of alleged deficiency because of adverse reports from the professional consultants who had been monitoring compliance with the Judgment and letters of complaint from prisoners. The district court found, however, that "the experts had noted with satisfaction the significant progress that had been made in all areas" that they had identified as needing improvement. Those findings are not clearly erroneous. Because the experts' reports pointed to improvements, not just to deficiencies, the reports did not provide constructive notice even if, in theory, they could have done so under the terms of the Judgment. The prisoners' complaint letters are insufficient because complaints from individual prisoners are not the same thing as notice that the class as a whole intends to seek extension of the Judgment based on certain grounds.
 
 
 26
 Second, Plaintiffs argue that they did not have to provide more detailed notice because Defendants themselves had moved for termination of the entire Judgment under 18 U.S.C. § 3626(b). That theory is unavailing because of the terms of the Judgment itself. To the extent that Plaintiffs did not timely move for an extension of the medical services provisions, those parts of the Judgment expired by their own terms. The district court did not need to rule on Defendants' motion to terminate these already expired provisions. See Taylor v. United States, 181 F.3d 1017, 1022 (9th Cir.1999) (en banc) (holding that a motion to terminate a consent decree was "moot" because there was "no ... consent decree left to be terminated").
 
 
 27
 Third, Plaintiffs contend that more specific notice was unnecessary because the provisions of the Judgment pertaining to mental health, dental, and other medical services are closely related. In a general sense that may be so, but it is readily possible to separate health care services by discipline. Indeed, the fact that Plaintiffs themselves isolated mental health and dental services in the two communications that they sent to Defendants refutes their own argument.
 
 
 28
 Finally, Plaintiffs assert that Defendants were not prejudiced by the lack of timely notice. Assuming that prejudice is relevant under the terms of the Judgment, Plaintiffs' failure to specify perceived deficiencies outside the areas of mental health and dental care deprived Defendants of the opportunity to correct those deficiencies within the four-year period during which the Judgment was in effect. By requiring that notice be given one year before the expiration of the Judgment, the Judgment clearly contemplated that Defendants should have such an opportunity.
 
 
 29
 In summary, we hold that the district court did not err in limiting the scope of the hearing to evidence regarding mental health and dental services at the Prison.
 
 
 30
 B. Application of the PLRA to Plaintiffs' Motion to Extend Jurisdiction
 
 
 31
 The district court's construction of the PLRA is a question of law, which we review de novo. Gilmore v. California, 220 F.3d 987, 997 (9th Cir.2000). The district court held that the prospective-relief provisions of the PLRA applied to Plaintiffs' motion to extend jurisdiction. The court then denied the motion on the ground that Plaintiffs failed to demonstrate a "current and ongoing violation" of their constitutional rights. Plaintiffs argue that the court should not have applied the PLRA because extension of the Judgment is not "prospective relief" subject to the strict limitations of that statute. In the alternative, they argue that, even if the PLRA does constrain the district court's power to extend the Judgment, the court applied the wrong legal standard. We will examine each of these two arguments in turn.
 
 
 32
 1. Applicability of the PLRA to Plaintiffs' Motion to Extend Jurisdiction
 
 
 33
 The PLRA limits the power of federal courts to grant or approve certain remedies in actions challenging prison conditions:
 
 
 34
 Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.
 
 
 35
 18 U.S.C. § 3626(a)(1)(A). As defined by Congress, "the term `prospective relief' means all relief other than compensatory monetary damages." Id. § 3626(g)(7). "[T]he term `relief' means all relief in any form that may be granted or approved by the court, and includes consent decrees...." Id. § 3626(g)(9).
 
 
 36
 Defendants contend that Plaintiffs' motion for extension of jurisdiction was a request for prospective relief within the meaning of the PLRA. They note that Plaintiffs asked the district court to craft an order that would have governed health services at the Prison for two years after January 12, 1999, making the request both nonmonetary and future-oriented. That being so, Defendants argue that § 3626(a)(1)(A) of the PLRA constrained the district court's power to extend jurisdiction over the Judgment.
 
 
 37
 Plaintiffs counter that their motion did not call for prospective relief because it did not require the court to devise any new remedy. They assert that the motion was nothing more than an attempt to enforce the existing terms of a court order by following the procedures laid out in that order. Because the district court retained continuing jurisdiction over the Judgment, Plaintiffs claim that the PLRA cannot limit the district court's power to extend its jurisdiction.
 
 
 38
 Plaintiffs' position is rebutted by Ninth Circuit precedents interpreting the meaning of "prospective relief" under the PLRA. We have explained that "[t]he PLRA restricts the power of the court to grant prospective relief regarding any civil action respecting prison conditions." Oluwa v. Gomez, 133 F.3d 1237, 1239 (9th Cir.1998) (emphasis added). The fact that the Judgment was approved before the enactment of the PLRA does not change the status of future remedial requirements as "prospective relief." Id. at 1240. To the contrary, we have held that § 3626 applies to all relief other than monetary damages "`whether such relief was originally granted or approved before, on, or after'" the PLRA's enactment. Gilmore, 220 F.3d at 999 n. 15 (quoting Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, § 101, 110 Stat. 1321, 1321-70). Thus, the Judgment and any extension thereof constitute "prospective relief" under the PLRA.
 
 
 39
 In support of their view, Plaintiffs cite Essex County Jail Annex Inmates v. Treffinger, 18 F.Supp.2d 445 (D.N.J.1998), and Inmates of Occoquan v. Barry, C.A. No. 86-2128 (D.D.C. July 23, 1996) (unpublished disposition). Of course, neither case binds us. Further, both cases are readily distinguishable.
 
 
 40
 In each of those cases, the plaintiffs filed motions for contempt in order to enforce substantive provisions of their respective consent decrees. Neither decision addressed a situation in which the plaintiffs were seeking to extend the life of an expiring decree or in which the defendants were seeking to terminate a decree pursuant to the PLRA. See, e.g., Essex County, 18 F.Supp.2d at 462 ("The enforcement of a valid consent decree is not the kind of `prospective relief' considered by § 3626(a). As long as the underlying consent order remains valid — neither party has made a 3626(b) motion to terminate — the court must be able to enforce it.").
 
 
 41
 In short, the district court properly concluded that the prospective-relief provisions of the PLRA apply to Plaintiffs' motion to extend jurisdiction.[2]
 
 2. Applicable Legal Standard Under the PLRA
 
 42
 Plaintiffs argue in the alternative that, even if § 3626 limited the district court's ability to extend jurisdiction, the court applied the wrong legal standard. Plaintiffs assert that the district court erred by requiring them to prove a "current and ongoing violation" of their constitutional rights. The quoted standard appears in § 3626(b)(3), which pertains to termination proceedings and which states in part: "Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right...." (Emphasis added.) We are not persuaded by Plaintiffs' argument.
 
 
 43
 The quoted standard for termination does not differ materially from the standard to be applied in deciding whether prospective relief is proper. To prevail on their motion to extend jurisdiction, Plaintiffs must establish that the prospective relief "extend[s] no further than necessary to correct the violation of" their Eighth Amendment rights. 18 U.S.C. § 3626(a)(1)(A) (emphasis added). This standard, too, requires the existence of a constitutional "violation" in need of correction. The text of § 3626(a)(1)(A) suggests that, in the absence of a "current and ongoing" violation, there is no occasion to fashion prospective relief to cure the violation. In other words, if a violation no longer exists, the statute does not permit the court to order prospective relief. As we have declared:
 
 
 44
 [T]he general standard for granting prospective relief differs little from the standard set forth in § 3626(b)(2) for terminating prospective relief, or from the standard set forth in § 3626(b)(3) for pre-serving relief to correct a current and ongoing violation. The limits on federal court jurisdiction are essentially the same — no more than necessary to correct the underlying constitutional violation.
 
 
 45
 Gilmore, 220 F.3d at 1006.
 
 
 46
 To summarize, the district court properly applied the PLRA's prospective-relief provisions to Plaintiffs' motion to extend jurisdiction. Accordingly, the Judgment expired by its own terms unless Plaintiffs proved that the Prison's mental health and dental services violated the Eighth Amendment, an issue to which we now turn.[3]
 
 C. Eighth Amendment Analysis
 
 47
 The district court made extensive factual findings with respect to mental health and dental services. Based on its findings, the court concluded that Plaintiffs had failed to prove that the quality and availability of those services fell below the minimum prescribed by the Eighth Amendment. Therefore, the court determined that the PLRA prevented it from granting Plaintiffs' motion to extend the Judgment.
 
 
 48
 Whether the Prison's mental health and dental services violate the Eighth Amendment is a mixed question of law and fact. See Campbell v. Wood, 18 F.3d 662, 681 (9th Cir.1994) (en banc) (reviewing whether hanging violates the Eighth Amendment as a mixed question of law and fact). The district court's factual findings regarding conditions at the Prison are reviewed for clear error. However, its conclusion that the facts do not demonstrate an Eighth Amendment violation is a question of law that we review de novo. Id.
 
 
 49
 Mere medical malpractice does not constitute cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Instead, the Eighth Amendment is violated when prison officials demonstrate "deliberate indifference to serious medical needs." Id. at 104, 97 S.Ct. 285; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996).
 
 
 50
 In order to establish a constitutional violation, Plaintiffs must satisfy both the objective and subjective components of a two-part test. Wilson v. Seiter, 501 U.S. 294, 298-99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). First, they must prove that Defendants have deprived them of the "`minimal civilized measure of life's necessities.'" Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998) (quoting Wilson, 501 U.S. at 304, 111 S.Ct. 2321). Second, Plaintiffs must demonstrate that Defendants acted with "deliberate indifference" in doing so. Wilson, 501 U.S. at 297, 303, 111 S.Ct. 2321. Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "`deny, delay, or intentionally interfere with medical treatment.'" Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir.1992) (quoting Hunt v. Dental Dep't, 865 F.2d 198, 201 (9th Cir.1989)). However, the officials' conduct must constitute "`unnecessary and wanton infliction of pain'" before it violates the Eighth Amendment. Estelle, 429 U.S. at 104, 97 S.Ct. 285 (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)); see also Frost, 152 F.3d at 1128.
 
 
 51
 This is not an easy test for Plaintiffs to satisfy. To the contrary, this court has explained:
 
 
 52
 The Eighth Amendment is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. Rather, the Eighth Amendment proscribes the "unnecessary and wanton infliction of pain," which includes those sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering."
 
 
 53
 Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982) (citations omitted) (quoting Gregg, 428 U.S. at 173, 183, 96 S.Ct. 2909).
 
 
 54
 The record in this case is massive, and in our view it contains ample evidence to support either party's characterization of the facts. Because both views are fully plausible, the district court's factual findings with respect to conditions at the Prison are not clearly erroneous.
 
 1. Dental Health Services
 
 55
 After reviewing prisoners' dental records, testimony concerning patient care, and the reports of dental experts, the district court found that "Plaintiffs' concerns regarding the quality of dental services provided at [the Prison] do not appear to be substantiated by the record." The court concluded that, therefore, "Plaintiffs have not shown that the dental services provided at [the Prison] constitute a current and ongoing violation of their constitutional rights." In fact, the court opined that dental services at the Prison were acceptable even under the usual standard of care in nonprison settings: "[P]laintiffs have failed to carry their burden to show that the dental services provided by the dental clinic, and Dr. Weaver in particular, fell below minimum standards of acceptable professional practice."
 
 
 56
 Plaintiffs have three principal complaints with respect to dental care at the Prison. First, they claim that Dr. Weaver, one of the prison dentists, insists on extracting teeth rather than repairing them. Second, Plaintiffs complain that prisoners face long delays in dental treatment, up to five and one-half months for dentures and six weeks for dental care. Finally, they object to Defendants'"blanket exclusion of prophylactic dental care." The district court's findings rejecting each of these contentions are supported by the record.
 
 
 57
 First, with respect to Plaintiffs' criticism of Dr. Weaver, the court found that the dental clinic "is organized around Dr. Weaver performing extractions and restorations, with the contract dentists performing other routine dental work." In other words, Dr. Weaver performed many extractions because of a division of labor among the prison dentists. Moreover, the district court found that, although Dr. Weaver performs a large number of extractions, patients are advised of the option of root canals on salvageable teeth. The reports and testimony in the record support the district court's findings.[4]
 
 
 58
 In response to Plaintiffs' second major complaint, the court found that prisoners had access to dental care after a wait of only three weeks for a hygienist and six weeks for a dentist. In addition, it found that emergencies were treated the same day or the next day. Finally, the court found that the wait for dentures was about four months. Those findings are supported by the record. However, even if the district court's findings on delay were clearly erroneous, Plaintiffs could not prove an Eighth Amendment violation because they have not demonstrated that delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case: "[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an eighth amendment violation." Hunt, 865 F.2d at 200.
 
 
 59
 Finally, the district court found that, although Defendants do not provide "routine teeth cleaning," Prison dentists "may refer a patient for prophylactic treatment (cleaning and/or scaling) in his or her discretion, and the number of visits with the hygienist is not limited." Further, the court found that "Dr. Weaver refers patients to a hygienist if their periodontal disease requires it" and that "[t]his approach appears to be consistent with the Standards for Health Services in Prisons, published by the National Commission on Correctional Health Care in 1997." The court's findings are supported by the record. In the face of those findings, Plaintiffs cannot establish that the lack of routine teeth cleaning constitutes "deliberate indifference to serious medical needs." Estelle, 429 U.S. at 104, 97 S.Ct. 285.
 
 
 60
 2. Punishment of Prisoners for "Self-Harm Events"
 
 
 61
 Plaintiffs next argue that Defendants punish prisoners who are mentally ill for self-harm behavior over which the prisoners have no control and that Defendants punish them without any penological purpose. The district court disagreed as a matter of fact. The court found that many of the prisoners who engage in self-harm have "mixed motivations" for hurting themselves: "It would be a mistake to conclude that all such behavior is attributable to manipulation on the part of the inmates. But it would also be a mistake to conclude that manipulation is not often a part of the individual inmate's agenda." Citing examples of such manipulation, the court found that the sanctions imposed by Defendants are a "reasonable and moderate" response to self-harm incidents and that they are designed "to attempt to discourage and deter such behavior," which is a legitimate penological goal.
 
 
 62
 Although several of the experts whose opinions appear in the record did not agree with those determinations, there is sufficient support in the record to justify the court's findings. Therefore, the present action is distinguishable from those decisions on which Plaintiffs rely. See, e.g., Coleman v. Wilson, 912 F.Supp. 1282, 1320-21 (E.D.Cal.1995); Casey v. Lewis, 834 F.Supp. 1477, 1529-34, 1550 (D.Ariz.1993); Arnold v. Lewis, 803 F.Supp. 246, 249-51 (D.Ariz.1992). Inmates at the Prison are not "being treated with punitive measures by the custody staff to control the inmates' behavior without regard to the cause of the behavior, the efficacy of such measures, or the impact of those measures on the inmates' mental illnesses." Coleman, 912 F.Supp. at 1320. To the contrary, the sanctions for self-harm are minor, are designed to deter dangerous — and sometimes even deadly — behavior, and are often cleared through the Prison's psychiatrist before imposition.[5] Additionally, the regulation pursuant to which these sanctions are administered requires the hearings officer to "consider the inmate's mental health and his/ her intellectual, emotional, and maturity levels and what effect a particular sanction might have on the inmate in light of such factors." Wash. Admin. Code § 137-28-360.
 
 
 63
 Thus, Plaintiffs failed to prove that Defendants' practice of sanctioning inmates for self-harm constitutes cruel and unusual punishment.
 
 3. Use of Force on Mentally Ill Prisoners
 
 64
 Next, Plaintiffs assert that members of the Prison's staff use force, including pepper spray, on prisoners instead of employing appropriate mental health interventions. We will first address the contentions concerning pepper spray and then consider Plaintiffs' other allegations of force.
 
 
 65
 The district court found that "the institution does not inappropriately rely on pepper spray as a means of controlling inmates." It noted that
 
 
 66
 the evidence before the Court is that pepper spray has been used on one occasion.[6] That occasion was videotaped and a copy of the tape is in evidence. The Court has examined the evidence adduced by the parties as to this singular use of pepper spray, and concludes that its use was not inappropriate on this occasion.
 
 
 67
 The court also ruled that Defendants' general policies on the use of pepper spray are constitutional. The court found that Defendants had authorized the use of pepper spray approximately 20 times, yet it had actually been used only once; that staff are properly trained in the use of pepper spray; and that staff may not employ it without first being personally subjected to it. Further, the court found that
 
 
 68
 use of pepper spray is carefully considered in advance of its authorization, restricted and confined for limited purposes, and used only very sparingly. Although professionals disagree with respect to the appropriateness of using pepper spray for managing the behavior of mentally ill inmates, [the Prison's] approach to its use does not seem to be unreasonable.
 
 
 69
 The district court's findings are supported by the record and its conclusions are therefore permissible.[7]
 
 
 70
 With respect to Defendants' use of other forms of force, the district court found that "the use of force in controlling inmates with mental health problems ... is [not] being misused at [the Prison.] Staff testified that force is used as a last resort, and that when it is used the incident is videotaped." The court concluded that "[n]one of the tapes or the testimony presented at the hearing establishes or even strongly suggests that force is being misused."
 
 
 71
 Plaintiffs point to a handful of incidents in which force was used on mentally ill prisoners in the absence of consultations with mental health staff. However, Plaintiffs did not show that such incidents were commonplace or that Prison officials were deliberately indifferent in any of these incidents. Thus, Plaintiffs have not established a violation of their constitutional rights.
 
 4. Staffing Levels
 
 72
 The best substantiated of all the alleged deficiencies is the small number of mental health staff members at the Prison. The bulk of the evidence in the record suggests that Defendants have failed to respond to the independent monitors' requests for an increase in staffing. Nonetheless, the district court found that the existing level of staffing, while not optimal, has not resulted in an unconstitutionally low level of mental health care. Because the court's findings of adequate mental health care are not clearly erroneous, Plaintiffs failed to meet their burden of demonstrating a violation of the Eighth Amendment.
 
 
 73
 The district court found that "outpatient services appear to meet the needs of the inmates." It noted that patient requests for mental health services are reviewed and triaged by the next business day, and are addressed substantively within four days. Similarly, it found that "triage groups allow inmates to have contact with a mental health professional on a non crisis basis one weekday after the request is submitted" and that outpatient services include group counseling in a number of areas. The court also noted that inmates with Axis I diagnoses[8] may receive individual counseling. Finally, the court found that one staff member is assigned as the Prison's crisis counselor each day and that outpatients requesting crisis assistance are seen immediately by mental health staff.
 
 
 74
 With respect to inpatient mental health services, the district court found that group counseling is provided on a weekly basis to prisoners housed in the special mental health Treatment and Evaluation Center. It also found that prisoners in this unit are provided with a treatment plan and that their medications are monitored by the Prison psychiatrist and other staff members. The court noted that, in crisis situations, Defendants maintain a one-to-one watch system, and that inmates who are perceived to be a risk to themselves are placed in a close observation area.
 
 
 75
 The evidence in the record supports each of the district court's findings. In addition, many of those testifying noted that, in general, Defendants are meeting the basic mental health needs of the prisoners. Thus, the low staffing levels at the Prison do not constitute an Eighth Amendment violation.
 
 5. Other Conditions
 
 76
 Finally, Plaintiffs argue that Defendants' policies with respect to prisoner transfers, mental health segregation, medication management, and the Offender Health Plan violate the Eighth Amendment. However, these contentions find little support in the record.
 
 
 77
 First, Plaintiffs have not established that prison officials are deliberately indifferent to the need to transfer mentally ill prisoners to facilities that may better accommodate their needs. Instead, the record shows that Defendants have tried to transfer at least two mentally ill patients, but that receiving institutions have not accepted the inmates or the inmates began to stabilize. In addition, there is evidence that the civil system could not handle these inmates any better than the Prison has.
 
 
 78
 Second, Plaintiffs have not proved that Defendants' mental health segregation policy constitutes cruel and unusual punishment. In fact, some of those who testified asserted that conditions in the Prison's close-observation areas are in accord with prevailing practices in the mental health community.
 
 
 79
 Third, the district court did not clearly err in finding that Defendants' system for administration and tracking of medications is constitutionally adequate. Although the independent experts expressed concern that the system was insufficiently formal, evidence presented by Defendants shows that both inpatients and outpatients are subject to medication compliance monitoring, that Defendants have increased the number of staff hours dedicated to medication management, and that Defendants have made a number of reforms to their method for distributing medications. Accordingly, there is sufficient evidence in the record to support the district court's finding that medication management at the Prison does not violate the Eighth Amendment.
 
 
 80
 Finally, Plaintiffs have failed to demonstrate that Defendants' administration of the Offender Health Plan constitutes cruel and unusual punishment. Although Plaintiffs argue that the plan results in the denial of treatment that Defendants have a constitutional obligation to provide, they raise this complaint primarily in the context of medical care and dental care. Plaintiffs cite insufficient support in the record for their contention that, as a result of the plan, prisoners are not receiving the mental health care that they need.
 
 
 81
 We conclude that the district court's findings are not clearly erroneous and that Defendants' transfer, segregation, medication management, and health plan policies do not violate the Eighth Amendment.
 
 
 82
 D. Defendants' Motion to Terminate the Judgment
 
 
 83
 Because we hold that the district court properly denied Plaintiffs' motion to extend jurisdiction, we need not examine whether the district court erred in its analysis of Defendants' motion to terminate. The Judgment expired by its own terms when the district court denied Plaintiffs' motion to extend and, thus, Defendants' motion to terminate was moot. Cf. Taylor, 181 F.3d at 1022 (holding that a motion to terminate a consent decree was "moot" because there was "no ... consent decree left to be terminated").
 
 E. First Motion for Contempt
 
 84
 A district court's decision to deny a motion for contempt is reviewed for abuse of discretion. Hook v. Ariz. Dep't of Corr., 107 F.3d 1397, 1403 (9th Cir.1997). We may reverse only if the district court has misapprehended the law or rested its decision on a clearly erroneous finding of a material fact. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir.2001).
 
 
 85
 Plaintiffs filed a motion for contempt on February 22, 1999. The district court denied the motion, finding that Defendants had substantially complied with the mental health and dental provisions of the Judgment and that a motion for contempt of the remainder of the Judgment was untimely. We affirm the district court's ruling with respect to the mental health and dental provisions of the Judgment. With respect to the other medical services provisions, however, we conclude that the district court misapprehended the law and therefore reverse and remand for further proceedings.
 
 1. Mental Health and Dental Provisions
 
 86
 Plaintiffs argue in part that the district court improperly denied the contempt motion on the ground that Defendants had not committed an Eighth Amendment violation. However, in its concluding discussion, the court explained:
 
 
 87
 With respect to dental care and mental health care, the Court has determined that the care provided and steps taken to address those issues substantially complied with the terms of the Stipulation and Judgment. In addition, the Court has concluded that there is not a current and ongoing violation of the Constitutional rights of inmates at [the Prison] with respect to the dental and mental health care provided.
 
 
 88
 (Emphasis added.) Substantial compliance with the Judgment is an acceptable defense to Plaintiffs' motion for civil contempt. Go-Video, Inc. v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.), 10 F.3d 693, 695 (9th Cir.1993). The district court addressed that question directly and answered it in Defendants' favor.
 
 
 89
 Because the court applied the correct legal standard, Plaintiffs are left with their alternative argument that "the district court denied the prisoners' contempt motion based on the erroneous conclusion that [the Prison] had substantially complied with the terms of the Judgment." For the reasons explained in the foregoing sections of this opinion, the district court did not make clearly erroneous findings of fact. The district court concluded that these findings indicate substantial compliance, a conclusion that is not an abuse of discretion.
 
 2. Other Medical Care Provisions
 
 90
 The district court declined even to consider whether Defendants were in contempt for failing to comply substantially with the other medical care provisions of the Judgment. The court reasoned that the motion for contempt was "untimely" because "Plaintiffs failed to give adequate notice [of] their intent to seek an extension of jurisdiction over anything other than dental and mental health care; those terms of the Stipulation and Judgment expired January 12, 1999."
 
 
 91
 The problem with that reasoning is that the court already had issued two orders "deferring the automatic expiration of the Stipulation and Judgment until the court can enter findings regarding whether an extension of jurisdiction is warranted." Because the orders deferring expiration of the Judgment were worded broadly and did not distinguish between the mental health and dental provisions, on the one hand, and other health services provisions, on the other, the entire Judgment remained in force when Plaintiffs filed their first motion for contempt. That is so even though (as we have held above) the court eventually concluded that Plaintiffs had not sought to extend the Judgment in a timely manner as to the other health services provisions. The temporary extension of the Judgment was in aid of the court's jurisdiction to decide its jurisdiction. That is, the district court had power to extend the Judgment "for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." United States v. United Mine Workers of Am., 330 U.S. 258, 290, 67 S.Ct. 677, 91 L.Ed. 884 (1947); see also Matsuk v. INS, 247 F.3d 999, 1000-01 (9th Cir.2001) ("We have jurisdiction `to determine whether jurisdiction exists.)'" (quoting Flores-Miramontes v. INS, 212 F.3d 1133, 1135 (9th Cir.2000)).
 
 
 92
 Defendants argue that the word "provisional" in the orders extending the life of the Judgment meant that the extension affected only those portions of the Judgment concerning mental health and dental care. We are not persuaded. The term "provisional" generally means "temporary." Black's Law Dictionary 1224 (6th ed. 1990) ("Temporary; preliminary; tentative; taken or done by way of precaution or ad interim."); Oxford English Dictionary 719 (2d ed. 1989) ("Of, belonging to, or of the nature of a temporary provision or arrangement; provided or adopted for present needs or for the time being; supplying the place of something regular, permanent, or final...."). Because the orders did not otherwise limit the substantive reach of the extension of the Judgment, we decline to adopt Defendants' idiosyncratic interpretation of the term "provisional."
 
 
 93
 To the extent that the Judgment required notice before the filing of a motion for contempt alleging a past breach of the substantive terms of the Judgment — as distinct from the notice required to extend the court's continuing jurisdiction into the future — Plaintiffs complied with it.[9] Accordingly, the district court's refusal even to consider the merits of Plaintiffs' motion was an abuse of discretion. We reverse this aspect of the decision and remand the case to the district court for further proceedings.
 
 3. Permissible Sanctions on Remand
 
 94
 On remand, the district court may conclude that Defendants substantially complied with the medical services provisions of the Judgment at all times relevant to this action.[10] However, should the court hold otherwise, it may order only retrospective relief. That is because the consent decree that is the subject of Plaintiffs' contempt motion expired on January 5, 2000, and is no longer in effect. See Imprisoned Citizens Union v. Ridge, 169 F.3d 178, 190 (3d Cir.1999) (holding that extension of jurisdiction over a terminated consent decree is an inappropriate remedy for past civil contempt).
 
 
 95
 F. Motion to Compel Disclosure of Defendants' Use-of-Force Policies
 
 
 96
 We review for abuse of discretion the district court's denial of Plaintiffs' motion to compel discovery. Mabe v. San Bernardino County, 237 F.3d 1101, 1112 (9th Cir.2001). As we have explained, "`[b]road discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.'" Goehring v. Brophy, 94 F.3d 1294, 1305 (9th Cir.1996) (quoting Sablan v. Dep't of Fin., 856 F.2d 1317, 1321 (9th Cir.1988)).
 
 
 97
 The district court refused to order disclosure of Defendants' internal policies regarding the use of force against inmates. Plaintiffs urge reversal on the ground that any matter that reasonably can be expected to lead to admissible evidence is discoverable. Fed.R.Civ.P. 26(b)(1).
 
 
 98
 The disputed evidence was only minimally relevant to Plaintiffs' case. As the district court permissibly found after reviewing the policies in camera, "there is a very small portion of those documents which might have some minimal relevance to the issues which have been placed before the Court." Because Plaintiffs suffered no prejudice from the denial of their motion to compel, they are not entitled to reversal on that ground.
 
 CONCLUSION
 
 99
 We affirm the district court's denial of Plaintiffs' motion to extend jurisdiction over the Judgment and its denial of Plaintiffs' motion to compel discovery.
 
 
 100
 However, we reverse in part the district court's denial of Plaintiffs' first contempt motion. On remand, the court shall consider the merits of Plaintiffs' contention that Defendants failed to substantially comply with the medical services provisions of the Judgment before January 5, 2000.
 
 
 101
 AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion. The parties shall bear their own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs' second contempt motion is addressed in a separate Order
 
 
 [2]
 Arguably, the prospective-relief provisions of the PLRA applied to the district court's earlier, provisional extensions of the Judgment. However, Defendants did not cross-appeal on this issue, and they conceded at oral argument that the issue is not before us
 
 
 [3]
 Section 3626(a)(1)(A) also states that prospective relief may not be granted "unless the court finds that such relief is narrowly drawn... and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). The district court did not reach those questions because it determined that the Judgment extended "further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."Id. Because we affirm the district court, we likewise need not reach these additional issues.
 
 
 [4]
 For example, the independent expert charged with monitoring dental care at the Prison reported that he "saw nothing to indicate that too many extractions were being done," that he "fe[lt] confident that patients are provided an option when it comes to extracting salvageable teeth," and that "Dr. Weaver has developed an unwarranted reputation for extracting too many teeth."
 
 
 [5]
 The Prison's former psychiatrist testified that she had never been consulted before an infraction was issued, but that she had been consulted before sanctions were imposed for an infraction
 
 
 [6]
 After the evidentiary hearing, Plaintiffs submitted evidence demonstrating that pepper spray had been used on two other occasions. However, Plaintiffs failed to demonstrate that the use of spray in these instances was inappropriate. Further, the later-introduced evidence does not make the district court's earlier finding erroneous.
 
 
 [7]
 Regarding the use of force and sanctions for self-harm, Plaintiffs quarrel with the court's use of the word "reasonable," suggesting that the court inappropriately applied the standard ofTurner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), in the Eighth Amendment context. See Jordan v. Gardner, 986 F.2d 1521, 1530 (9th Cir.1993) (en banc) (holding that Turner does not apply to Eighth Amendment claims). Considered as a whole, however, the findings demonstrate that the court correctly applied traditional Eighth Amendment standards.
 
 
 [8]
 The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed.1994, text rev.2000) categorizes mental diagnoses under five different axes. Axis I diagnoses include mood and anxiety disorders, schizophrenia and other psychotic disorders, substance-related disorders, eating disorders, sleep disorders, and impulse-control disorders
 
 
 [9]
 Unless "undue delay or imminent harm to any party" would result, the Judgment required the parties to submit their disputes to a mediator before bringing them before the court. Plaintiffs satisfied that requirement, reaching an impasse with Defendants on January 29, 1999
 
 
 [10]
 Because the district court twice extended its jurisdiction over the Judgment, the medical services provisions were in effect until January 5, 2000, the date on which the court's final judgment was entered