# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

AMY TERRELL PAYTON,
            Appellant,

      v.

DEPARTMENT OF VETERANS
    AFFAIRS,
            Agency.

DOCKET NUMBER
AT-0752-14-0055-I-1

DATE: January 29, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kaye Johnson Persons</u>, Biloxi, Mississippi, for the appellant.

<u>Johnston B. Walker</u>, Jackson, Mississippi, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision which affirmed her removal and denied her affirmative defenses. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision IN PART on the basis of a *Ward/Stone* due process violation, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

DO NOT SUSTAIN the appellant's removal. We AFFIRM the initial decision insofar as it denied the appellant's affirmative defenses of equal employment opportunity (EEO) retaliation and sex-based discrimination. This is the Board's final decision in this matter. *See* 5 C.F.R. § 1201.113.

¶2      The appellant served as a Nursing Assistant in one of the agency's geriatric dementia units at all times relevant to this appeal. Initial Appeal File (IAF), Tab 4 at 10-11. The agency issued the appellant a notice of proposed removal based upon three charges of misconduct: endangering the safety of a patient, leaving the work area, and lack of candor (based on two specifications). *Id*. at 27-31. In its notice of proposed removal, the agency specified that it was relying on two prior instances of discipline as aggravating factors. *Id*. at 29. The appellant provided written replies addressing both her proposed removal and the merits of her prior disciplinary actions. *Id*. at 23-26. The deciding official signed a *Douglas* factors worksheet containing a narrative explanation of each of the factors he considered in reaching his decision, including the intentional nature of the employee's misconduct, the appellant's past disciplinary history, the severity of her misconduct (including the risk of harm to the patient), and the possible negative attention and notoriety that the appellant's misconduct could have caused the agency. *Id*. at 19-21. The deciding official imposed the appellant's removal effective August 24, 2013. *Id*. at 15-18.

¶3      The appellant filed an initial appeal of her removal, raised affirmative defenses of retaliation and sex discrimination, and requested a hearing. IAF, Tab 1. Following an in-person hearing, the administrative judge ordered the parties to brief any and all potential *Ward/Stone* due process or harmful procedural error claims that might have been developed during the hearing. IAF, Tab 29, Initial Decision (ID) at 19-20; *see also* IAF, Tabs 26 (agency post-hearing brief), 27 (appellant's post-hearing brief). The administrative judge subsequently issued an initial decision sustaining two of the three charges and affirming the appellant's removal, finding that although the deciding official improperly considered

discipline, which was issued after the appellant's misconduct at issue in this case,[2] the agency nevertheless proved the reasonableness of the penalty of removal based upon the sustained charges. ID at 13 (citing the deciding official's testimony). The administrative judge further found no evidence of a due process or harmful error violation, and he denied the appellant's affirmative defenses of EEO retaliation and sex discrimination. ID at 16-19.

¶4      The appellant has filed a petition for review challenging the administrative judge's initial decision. Petition for Review (PFR) File, Tab 1. In her petition for review, the appellant argues, inter alia, that the administrative judge erred in sustaining the charges against her and wrongly denied her discrimination and due process claims. PFR File, Tab 1 at 17-23. The agency has filed a response in opposition. PFR File, Tab 3.

The deciding official considered aggravating factors which were not contained within the notice of proposed removal.

¶5      Pursuant to *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's right to due process when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed. *See Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 8 (2013). *Ward/Stone* and its progeny recognize, however, that not all ex parte communications rise to the level of a due process violation; rather, only ex parte communications which introduce new and material information to the deciding official are constitutionally infirm. *Id*. In *Stone*, the U.S. Court of Appeals for the Federal Circuit identified the following factors to be used to determine whether ex parte

---

[2] *See* ID at 13 (citing *Cantu v. Department of the Treasury*, 88 M.S.P.R. 253, ¶ 6 (2001) (discipline which is issued after the incidents at issue in an appeal should not be considered as an aggravating factor because the employee has not been given an opportunity to learn from his past mistakes)).

information is new and material: (1) whether the ex parte communication introduces cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Id*. (citing *Stone*, 179 F.3d at 1377).

¶6        Pursuant to the *Ward*/*Stone* line of authority, when an agency intends to rely on an aggravating factor as the basis for the imposition of a penalty, such factors must be included in the agency's advance notice of the adverse action so that the employee will have a fair and complete opportunity to respond to those factors before the deciding official. *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 10 (2012). If an employee has not been given "notice of any aggravating factors supporting an enhanced penalty," an ex parte communication with the deciding official may constitute a constitutional due process violation because it potentially deprives the employee of notice of all of the evidence being used against her and the opportunity to respond. *Id*. (quoting *Ward*, 634 F.3d at 1280).

¶7        We have reviewed the initial decision, along with the record evidence developed below, and we find that the deciding official committed a *Ward*/*Stone* due process violation by considering several aggravating factors which were not included in the agency's advance notice of the action. In its notice of proposed removal, the agency explained that the appellant's misconduct jeopardized the safety of a particular residential patient and that the appellant had previously been disciplined in April 2013 and November 2012. IAF, Tab 4 at 37-31. The agency included no additional discussion of any other proposed aggravating factors in its notice of proposed removal. *Id*. The deciding official's *Douglas* factors worksheet, however, reflects that the deciding official took into account several additional aggravating factors in rendering his decision, including the severity of the appellant's misconduct, the intentional nature of her actions, management's

loss of trust in the appellant, and the potential negative notoriety that the agency could have faced as a result of the appellant's misconduct. *See id*. at 19-21.

¶8     Although some of the aggravating factors cited by the deciding official "flowed naturally from the fact" that the appellant was charged with endangering the safety of a patient and lack of candor (such as the severity of the appellant's misconduct) and were thus properly considered, we find that the intentional nature of the appellant's conduct and the potential for negative attention toward the agency were not within the natural ambit of these charges. *See, e.g.*, *Harding v. U.S. Naval Academy*, 567 F. App'x 920, 925-26 (Fed. Cir. 2014)[3]; IAF, Tab 4 at 19 (*Douglas* factors worksheet referencing that the appellant "intentionally did not inform leadership when asked" about an unlocked gate and that "during a fact-finding the employee again intentionally gave untrue information"). Under these circumstances, the agency was required to notify the appellant that it would rely upon these additional aggravating factors in reaching a decision on her proposed removal. *See Langham v. U.S. Postal Service*, 92 M.S.P.R. 268, ¶ 7 (2002) (suggesting that the agency erred by not informing the appellant that it would consider the intentional nature of his conduct).[4] The agency, however, did not include these factors in the notice of proposed removal, and the appellant had no opportunity to respond to these aggravating factors before the deciding official rendered a decision.[5] IAF, Tab 4 at 27-31. We accordingly find that the deciding

---

[3] The Board may choose to follow nonprecedential decisions issued by the Federal Circuit which it finds persuasive. *See Erlendson v. Department of Justice*, 121 M.S.P.R. 441, ¶ 6 n.2 (2014).

[4] In *Langham*, the Board found that it could remedy the deciding official's error by performing its own analysis of the reasonableness of the penalty. *Langham*, 92 M.S.P.R. 268, ¶ 7. This practice, however, was overturned by the Federal Circuit's decision in *Ward*. *See Gray v. Department of Defense*, 116 M.S.P.R. 461, ¶ 7 (2011).

[5] During the hearing, the deciding official also offered conflicting testimony as to whether he considered the appellant's written reply before reviewing and signing the *Douglas* factors worksheet. *See* Hearing Transcript (HT) at 206, 214-15. In light of our decision, we do not reach the issue of whether the deciding official committed a separate due process violation based upon his possible failure to consider the

official's reliance on these factors violated the appellant's due process rights under *Ward*/*Stone*. *See Solis v. Department of Justice*, [117 M.S.P.R. 458](#), ¶ 9 (2012) (finding a due process violation based on the deciding official's *Douglas* factors worksheet and hearing testimony); HT at 155-56 (deciding official's testimony that he reviewed each of the *Douglas* factors listed on the worksheet).[6]

¶9       In further support of our conclusion, we note that neither of the sustained charges against the appellant—endangering the safety of a patient and lack of candor—required proof of intent; although lack of candor is a broad and flexible concept, it does not require a showing of intent. *See Rhee v. Department of the Treasury*, [117 M.S.P.R. 640](#), ¶ 10 (2012) (citing *Ludlum v. Department of Justice*, [287 F.3d 1208](#), 1283-84 (Fed. Cir. 2002)). Moreover, although the intentional nature of an employee's conduct is always a relevant aggravating factor that may be considered as part of the deciding official's penalty analysis even if it is not part of the charge against the employee, a deciding official must inform the employee in advance of his intent to rely upon such an aggravating factor in reaching a decision on the proposed adverse action. *See Fernandez v. Department of Agriculture*, [95 M.S.P.R. 63](#), ¶¶ 8, 14 (2003) (intent is always relevant to the reasonableness of an agency's penalty determination); *Hamilton v. U.S. Postal Service*, [71 M.S.P.R. 547](#), 556 (1996) (an agency may consider the employee's intent even if it is not required as part of the charge of misconduct). Because neither of the sustained charges against the appellant required proof of

appellant's response before rendering a decision on the proposed removal. *See, e.g.*, *Massey v. Department of the Army*, [120 M.S.P.R. 226](#), ¶ 10 (2013).

[6] There was testimony and evidence furnished below that the appellant was presented with "the evidence file" prior to her responding to the notice of proposed removal. Based on the information in the record before us, it does not appear that the agency provided the appellant with a copy of the *Douglas* factor worksheet as part of the evidence file. However, if the agency had done so and had allowed the appellant, in her reply to the deciding official, and opportunity to address the factors identified in the worksheet (whether or not she availed herself of that opportunity), then there would have been no ex parte communication and, therefore, no *Ward*/*Stone* violation.

intent, we find that the deciding official erred in considering the intentional nature of the appellant's misconduct without advanced notice. *See Jenkins*, [118 M.S.P.R. 161](#), ¶ 12 (the agency erred by considering charges in the agency's table of penalties which were not included in the notice of proposed removal); *Howard v. Department of the Air Force*, [118 M.S.P.R. 106](#), ¶ 6 (2012) (finding a due process violation based on the deciding official's consideration of performance deficiencies which were not included in the removal proposal).

¶10    The appellant's removal is NOT SUSTAINED, and the appellant is entitled to a new constitutionally-correct removal proceeding. *See Gray*, [116 M.S.P.R. 461](#), ¶ 12.

The administrative judge's denial of the appellant's affirmative defenses of retaliation and sex discrimination is affirmed.

¶11    The appellant also alleged that she was subjected to a hostile work environment based upon the sexual advances of a coworker and that the agency retaliated against her when it removed her from employment after filing a hostile work environment complaint. IAF, Tabs 1, 13. The administrative judge denied these affirmative defenses, finding that there was no causal link between the appellant's removal and the alleged hostile work environment caused by one of her coworkers, and that the appellant otherwise failed to offer any evidence in support of a claim of disparate treatment. ID at 18-19.

¶12    We agree with the administrative judge that there is no linkage between the alleged hostile work environment and the appellant's removal. Although an adverse employment action, such as a removal, can be considered as a part of a pattern of harassment, here, where the alleged harasser was not involved in either the decision to propose or to effectuate the appellant's removal, we agree with the administrative judge that there is no evidence of a nexus which could make the

appellant's removal part of the alleged pattern of sexual harassment.[7]  *See Johnson v. Defense Logistics Agency*, 61 M.S.P.R. 601, 609 (1994) (finding a linkage between the proposing official's racially-charged comments about the appellant and the deciding official's removal decision).  We therefore concur with the administrative judge that the appellant failed to establish that her removal was the result of sex-based discrimination.  ID at 17-18.  We further agree that there is no evidence of comparator employees in the record, and that the appellant has failed to demonstrate that the agency's decision to remove her from employment was a pretext for sex-based discrimination.  *See* ID at 18; PFR File, Tab 1 at 22 (only arguing that the deciding official's "strained" *Douglas* factors analysis evidences pretext).[8]

¶13      Lastly, we agree with the administrative judge that there is no evidence of retaliation based on the appellant's filing of an EEO complaint.  ID at 17.  The administrative judge found that the deciding official had no motive to retaliate against the appellant for filing an EEO complaint based on a coworker's alleged sexual harassment, and he credited the testimony of the deciding official that he took steps to separate the appellant from her coworker after she filed her complaint.  ID at 17-18.  The appellant has presented nothing on review challenging these findings, and we agree that the appellant has failed to establish by a preponderance of the evidence that the agency's real reason for removing her from employment was based on her prior EEO activity.  *See Jefferson v. U.S. Postal Service*, 81 M.S.P.R. 607, ¶ 9 (1999) (finding that the appellant did not establish retaliation even though the Board did not sustain the underlying charges of misconduct); *Carter v. Small Business Administration*, 61 M.S.P.R. 656,

---

[7] The merits of the appellant's underlying hostile work environment claim are not before the Board in this proceeding and are the basis of a separate EEO complaint.  *See* ID at 19 n.4.

[8] Even though we find that the deciding official considered certain aggravating factors which were not included in the notice of proposed removal, there is no evidence that the deciding official's removal decision was based on the appellant's sex.

665-66 (1994) (concluding that the appellant did not establish retaliation even though the agency failed to establish unacceptable performance under chapter 43).

## ORDER

¶14      We ORDER the agency to CANCEL the appellant's removal and to restore the appellant effective August 24, 2013. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶15      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶16      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶17      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶18        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:              _____
                                     William D. Spencer
                                     Clerk of the Board

Washington, D.C.

| | DFAS CHECKLIST |
|---|---|
|  | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.