**Hiroshi TOGUCHI, on behalf of himself and as Special Administrator of the Estate of Keane Toguchi, Plaintiffs–Appellants,**

v.

**SOON HWANG CHUNG, Defendant–Appellee.**

No. 03–15378.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2004.

Filed Dec. 10, 2004.

Carl M. Varady, Honolulu, HI, for the plaintiffs-appellants.

Girard D. Lau, Deputy Attorney General, Honolulu, HI, for the defendant-appellee.

Before: FARRIS, NOONAN, and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge:

We sympathize with the Toguchis on the loss of their son, Keane. However, we agree with the district court that Keane's death was not the result of Dr. Soon Hwang Chung's deliberate indifference to his serious medical needs. Accordingly, we affirm the district court's judgment in favor of Dr. Chung.

## I.

### BACKGROUND

Keane Toguchi (Keane) was incarcerated for most of the period between 1993 and 1998. He was treated by Dr. Chung during his incarceration at the Halawa Correctional Facility (Halawa) in 1997 and 1998. Keane had a lengthy history of mental illness and had been clinically diagnosed with bi-polar disorder, panic disorder, organic brain syndrome, depression, and Wolff–Parkinson–White Syndrome. Keane also had an extensive history of illicit drug use, including cocaine, crystal methamphetamine (ice), and heroin.

Keane was paroled in April of 1998, but returned to Halawa eight months later, after he violated his parole by testing positive for ice. In fact, Keane had taken ice two days prior to his readmission and had not taken his prescribed medications, including Seroquel, Klonopine, Tranxene, and Zoloft, for five days. Keane was placed under the direct care of Dr. Chung, who kept him in therapeutic lockdown for two weeks in an attempt to stabilize his condition. Dr. Chung prescribed Seroquel, Zoloft, Haldol, and Benadryl, and by December 16, Keane had been stabilized and released into the general population. Five days later, he began to display irrational behaviors, including urinating on the floor. Discontinuing the use of Seroquel and Haldol, Dr. Chung transferred Keane to the mental health module of the prison, and prescribed Trilafon (an antipsychotic) and Congentin to deal with his irrational behaviors.

Two days later, Keane was brought to Dr. Chung after he had been shaking, talking loudly, and moving around throughout the previous night. Dr. Chung reported her observations of Keane at 9:15 a.m. and treated him with Haldol, Cogen-tin, Benadryl, and Artane. At around 1:20 p.m., Dr. Chung observed Keane acting in a bizarre manner, including walking into walls and rocking on the toilet bowl. Dr. Chung ascribed Keane's irrational behaviors to a likely ice flashback. Dr. Chung considered Keane an imminent threat to himself and ordered him placed in restraints.

Dr. Chung observed Keane for about fifteen minutes after he was restrained and returned every fifteen minutes thereafter. At 2:30 p.m., the doctor noted that Keane had fallen asleep, and was still sleeping at 2:45 p.m. However, at 3:00 p.m., a nurse notified Dr. Chung that Keane had stopped breathing. Attempts to revive Keane failed, and he died shortly thereafter. The medical examiner described the cause of death as follows:

> [T]his 37–year–old man died as a result of combined toxic effects of sertraline and diphenhydramine. The blood level of sertraline is in the lethal level and the blood level of diphenhydramine is in the toxic level. These blood levels are attained by ingestion of multiple tablets of the medications. It is not known whether the medications were taken with suicidal intentions or accidentally ingested because of the altered mental status of the decedent.

Keane's parents (the Toguchis) brought a 42 U.S.C. § 1983 action against prison physicians Dr. Sisar Paderes and Dr. Chung alleging that they were deliberately indifferent to Keane's serious medical needs. Dr. Robert C. Marvit and Dr. Wayne R. Snodgrass served as experts on behalf of Dr. Chung. Dr. Marvit concluded that "it would be unrealistic to state that the levels [of Benadryl and Zoloft] in the blood were from the prescribed medications."[1] He also opined that "the care

---

1. The manner in which Keane obtained and ingested the large amounts of diphenhydra-

and treatment provided to [Keane] by Dr. Soon Hyung Chung was appropriate and met the standard of care for psychiatrists ..." Dr. Snodgrass similarly concluded that "[t]he clinical symptoms and signs exhibited by [Keane] were appropriately interpreted by Dr. Chung to be consistent with withdrawal from methamphetamine" and that the "drug therapy ordered by SH Chung, M.D. was appropriate and indicated."

Dr. Bruce Victor and Dr. Randall Tackett served as experts on behalf of the Toguchis. Dr. Victor concluded that:

> Dr. Chung's failure to evaluate [Keane's] actual condition, to conduct a differential diagnosis that would rule out disease or conditions other than 'ice flashbacks,' led her to disregard the known risks of harm from the medications she was administering to him in high doses which, in turn, were superimposed upon probable benzodiazipine withdrawal syndrome and WPW [Wolff–Parkinson–White Syndrome]. Her failure to consider these risks directly and proximately precluded proper treatment of [Keane] and, thereby, eliminated any chance of determining the seriousness of his condition or taking appropriate measures that would have prevented his death.

Dr. Tackett concluded that "[Keane] died from the combined effects of sertarline [sic] and diphenhydramine administered to him by Dr. Chung." Dr. Tackett expressed the view that these drugs, along with Cogentin, were prescribed "without any assessment by Dr. Chung of [Keane's] actual medical condition and without regard for possible withdrawal symptoms

that would be affecting his heart rate or potential for arrhythmia."

After considering the evidence submitted by the parties, the district court granted the defendants' summary judgment motion, concluding that there was no triable issue of material fact on the question of whether Keane's death resulted from Dr. Chung's deliberate indifference to his medical needs.[2]

## II.

### STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir. 2004). "Viewing the evidence in the light most favorable to the nonmoving party," we "must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citation omitted).

## III.

### DISCUSSION

**A. "Deliberate Indifference" under 42 U.S.C. § 1983**

1. *General Legal Standard*

As with many other prison-generated actions, this case was brought under 42 U.S.C. § 1983, and predicated upon a violation of the Eighth Amendment's proscription against cruel and unusual punishment. "The unnecessary and wanton infliction of pain upon incarcerated individuals under color of law constitutes a violation of the Eighth Amendment ..."

---

mine (Benadryl) and sertraline (Zoloft) is not clear. The district court noted that Keane's cellmate testified that Keane had obtained and ingested contraband prescription drugs. However, the district court did not consider this testimony because the deponent is a con-

victed felon and had initially given investigators a conflicting story.

**2.** The Toguchis did not contest the summary judgment motion as to Dr. Paderes.

*McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992) (citation, alteration and internal quotation marks omitted). A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs. *See id.*

■ To establish an Eighth Amendment violation, a prisoner "must satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir.2002) (citation omitted). First, there must be a demonstration that the prison official deprived the prisoner of the "minimal civilized measure of life's necessities." *Id.* (citation omitted).[3] Second, a prisoner must demonstrate that the prison official "acted with deliberate indifference in doing so." *Id.* (citation and internal quotation marks omitted).

■ A prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson,* 290 F.3d at 1188 (citation omitted).[4] This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer,* 511 U.S. at 839, 114 S.Ct. 1970. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin,* 974 F.2d at 1059 (alteration and citation omitted).

### 2. The Toguchis' Argument

■ The Toguchis assert that Dr. Chung was deliberately indifferent to Keane's medical needs in the following ways:

a) She treated Keane with Cogentin when she knew that he had been hospitalized in 1995 for a negative reaction to Cogentin;

b) In diagnosing Keane's condition, she did not consider the psychotic symptoms that could result from replacing his Seroquel prescription with Triafon;

c) She failed to employ emergency treatment to save Keane's life;

d) After Keane was placed into restraints, she failed to assure that he was physically inspected and his vital signs were taken every fifteen minutes;

e) She failed to consider the known risks associated with Klonopin withdrawal, including anxiety, seizures, elevated blood pressure and tachycardia;

---

**3.** This portion of the test was not contested in the district court and is not an issue on appeal.

**4.** In a recent case, we recognized that "deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." *Lolli v. County of Orange,* 351 F.3d 410, 421 (9th Cir.2003) (citations omitted); *see also Gibson,* 290 F.3d at 1197 (acknowledging that a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the obvious and extreme nature of a detainee's abnormal behavior). The Toguchis have not raised a material question of fact regarding the obviousness of any of the risks Dr. Chung allegedly ignored.

f) She failed to consider the negative effects that could result from the cross-potentiation of Zoloft, Benadryl, and Cogentin; and

g) She failed to conduct a differential diagnosis, which would have allowed her to eliminate the causes of Keane's illness.

Each assertion is addressed below.

### a. *Cogentin treatment*

The record regarding Dr. Chung's knowledge of Keane's 1995 negative reaction to Cogentin is somewhat contradictory. Dr. Chung initially denied any knowledge of Keane's prior problems with Cogentin. However, after being confronted with the 1995 medical report, Dr. Chung admitted that she "must have" previously read it. Dr. Chung then stated that she discounted the report because she disagreed with its conclusion that Keane's complication was caused by Cogentin. In response to a question from the Toguchis' attorney, Dr. Chung stated that she did not regard the use of Haldon and Cogentin as a serious risk.

■ Under a deliberate indifference analysis, we inquire whether "the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson*, 290 F.3d at 1187. Dr. Chung expressly stated that she never considered use of Cogentin to pose a serious risk, and the record contains no evidence to the contrary. In fact, Keane was administered Cogentin twice a day while he was under Dr. Chung's care in 1997, apparently with no ill effects. Dr. Chung's actions were informed by her past experience treating Keane. Because she did not believe that Cogentin use presented a serious risk of harm to Keane, her conduct cannot constitute deliberate indifference. *See Gibson*, 290 F.3d at 1187.

### b. *Changing Keane's prescription from Seroquel to Triafon*

■ The Toguchis argue that Seroquel is superior to Triafon, and therefore should not have been discontinued by Dr. Chung. However, a mere "difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996). Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Id.* (citation omitted). The Toguchis have not raised a material question of fact regarding this issue.

### c. *Failure to Employ Emergency Treatment*

■ Although the Toguchis allege that Dr. Chung did not adequately respond to Keane's respiratory arrest, the record reflects otherwise. After being notified of Keane's condition, Dr. Chung "ran down" to assist him. When she arrived, CPR was already being performed. Emergency personnel also arrived shortly after Toguchi stopped breathing. There is no indication in the record that Dr. Chung could have performed any procedure to revive Keane. Consequently, there is no legal significance to the fact that individuals other than Dr. Chung attempted to revive Keane. Although efforts to resuscitate Keane ultimately failed, Dr. Chung's response to the emergency was not deliberately indifferent. The Toguchis' conclusory assertion to the contrary is insufficient to raise an issue of material fact. *See Marks v. United States*, 578 F.2d 261, 263 (9th Cir.1978) ("Conclusory allegations unsupported by factual data will not create a triable issue of fact.") (citation omitted).

### d. *Failure to Adequately Monitor Keane While He was Restrained*

 The Toguchis fault Dr. Chung for an alleged failure to properly monitor Keane while he was in restraints. Their argument is based primarily on the restraint monitoring sheet recorded by the prison medical staff. Prison policy dictates that a prisoner in restraints be checked every fifteen minutes. There was no notation on the sheet that Keane was checked at 2:00 p.m. or at 2:15 p.m. on the day of his death.

The Toguchis fail to raise a material issue of fact for two reasons. First, prison policy requires that a restrained patient be checked every fifteen minutes "by authorized [Adult Correctional Officers] staff." Dr. Chung's unrefuted testimony was that the fifteen-minute interval respiratory check was "mainly for the nurses." Dr. Chung's testimony is consistent with the fact that nurses, rather than doctors, signed the monitoring sheet. The critical assertion is that Dr. Chung failed to monitor the patient, not that she failed to note the monitoring. And Dr. Chung's unchallenged testimony is that she "went back every fifteen minutes to see how [Keane] was doing."

### e. *Klonopin Withdrawal*

 The Toguchis' contention that Keane had been consistently taking Klonopin for nineteen years does not raise a material issue of fact. Actually, Keane had not taken Klonopin during the last five or six months before his parole in April of 1998, and according to Dr. Chung, he had been "totally stable with Trilafon, Depakote, BuSpar, and Cogentin." Dr. Chung, once again informed by her prior experience as Keane's physician, followed a course of treatment that she considered effective. There is absolutely no indication in the record that Dr. Chung was aware of a risk that Keane was suffering from Klonopin withdrawal. Absent such an awareness, there can be no liability under the Eighth Amendment. *See Gibson*, 290 F.3d at 1187.

### f. *Cross-potentiation of Zoloft, Benadryl, and Cogentin*

 Although Dr. Tackett opined that Dr. Chung "disregarded [the] serious and known risks" of combining the three drugs, his conclusion was merely speculative, because he lacked any insight into Dr. Chung's subjective knowledge. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir.1996) ("[M]ere ... speculation[does] not create a factual dispute for purposes of summary judgment.") (citation omitted). Dr. Tackett's opinion was predicated upon his position that Dr. Chung administered the medications without assessing Keane's actual medical condition and without regard to possible withdrawal systems. This accusation is one of negligence as opposed to deliberate indifference. As we recognized in *Lolli*, there must be a *conscious* disregard of a serious risk of harm for deliberate indifference to exist. *See Lolli*, 351 F.3d at 421. If Dr. Chung had assessed Keane and determined that he was suffering from withdrawal and, in the face of that knowledge, administered drugs that she knew to be life-threatening, her conduct might then meet the deliberate indifference standard. In *Lolli*, the officers *knew*, because they were told, that Lolli was a diabetic and needed food to avoid diabetes-induced ailments. *See id.* In contrast, Dr. Chung denied even administering the amounts of medication found in Keane's system. Additionally, Dr. Chung, who had treated Keane for a considerable period of time, attributed Keane's "withdrawal" symptoms to flashbacks. Dr. Tackett's contrary view

was a difference of medical opinion, which cannot support a claim of deliberate indifference. See Jackson, 90 F.3d at 332.

### g. Failure to Conduct a Differential Diagnosis

 Although Dr. Chung admitted the importance of differential diagnosis generally, she decided against conducting a differential diagnosis in this case. At the time Keane began to display irrational behaviors, Dr. Chung had treated him for a substantial period of time. Based on her extensive knowledge of Keane's medical history and his prior behavior, she concluded that Keane was suffering from ice flashbacks.[5] Because Dr. Chung was convinced that her diagnosis was correct, she did not undertake a differential diagnosis. Although this course of conduct conceivably could have risen to the level of negligence, there is no evidence that Dr. Chung was subjectively aware that her failure to conduct a differential diagnosis created a "substantial risk of serious harm" to Keane. Farmer, 511 U.S. at 837, 114 S.Ct. 1970.

Finally, Dr. Chung did not believe that Keane had access to contraband while in prison, and therefore did not consider that Keane's bizarre behavior could be the result of a drug overdose. It does not matter whether Dr. Chung's assumptions and conclusions were reasonable. Rather, so long as she was not subjectively aware of the risk that Keane could be suffering from a drug overdose, and disregarded that risk, she was not deliberately indifferent. Farmer, 511 U.S. at 837, 114 S.Ct. 1970.

### B. The Toguchis' Due Process Claim

 Mr. and Mrs. Toguchi sought damages for a violation of their constitutionally protected liberty interest in the companionship and society of their son. "It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir.2001) (citation, alterations and internal quotation marks omitted). However, for the same reasons that the Toguchis' deliberate indifference claim fails, their due process claim must also fail. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citations omitted); Smith v. City of Fontana, 818 F.2d 1411, 1418, n. 9 (9th Cir.1987) ("the Due Process Clause is simply not implicated by a negligent act of an official ...") (citation and internal quotation marks omitted) (emphasis in Smith).

### C. Conclusion

 Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. See Hallett, 296 F.3d at 744 ("Mere medical malpractice does not constitute cruel and unusual punishment.") (citation omitted); see also Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990) (stating that even gross negligence is insufficient to establish a constitutional violation). The Toguchis have not

---

**5.** Dr. Snodgrass agreed that "[t]he clinical symptoms and signs exhibited by Mr. Toguchi were appropriately interpreted by Dr. Chung to be consistent with withdrawal from meth- amphetamine" and that the "drug therapy ordered by SH Chung, M.D. was appropriate and indicated."

presented evidence that Dr. Chung's decisions "den[ied], delay[ed], or intentionally interfere[d] with [Keane's] medical treatment." *Hallett*, 296 F.3d at 744 (citation omitted). To the contrary, the record, viewed in the light most favorable to the Toguchis, reflects that Dr. Chung was consistently responsive to Keane's medical needs. Whether her responses were medically reasonable given Keane's medical condition and background is a question we do not reach. Because no genuine issue of fact was raised regarding Dr. Chung's subjective knowledge and conscious disregard of a substantial risk of serious injury to Keane, the district court properly entered summary judgment in favor of Dr. Chung on the § 1983 claim. Similarly, because a due process claim predicated upon the violation of a parent's liberty interest in the companionship of his child requires a showing of more than negligence, entry of summary judgment in favor of Dr. Chung was also appropriate on that claim.

AFFIRMED.