**Dennis HOLLIS, Plaintiff,**

v.

**DIRECTOR OF CORRECTIONS (C.D.C.), John Marshall (Warden) Hansen (M.D.) Ellen Greenman, M.D. (C.M.O.) Hepatitis–C (Committee), Defendants.**

No. CV 07–4117–SVW(RC).

United States District Court, C.D. California.

June 2, 2008.

Dennis Hollis, San Luis Obispo, CA, pro se.

Paul F Arentz, CAAG – California Attorney General, Los Angeles, CA, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES

STEPHEN V. WILSON, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; and (2) defendants' motion to dismiss the complaint and action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is granted, and Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order and the Magistrate Judge's Report and Recommendation by the United States mail on the parties.

## JUDGMENT

Pursuant to the Order of the Court approving the recommendations of the United States Magistrate Judge, and adopting

the same as the facts and conclusions of law herein,

IT IS ADJUDGED that Judgment be entered dismissing the complaint and action for failing to state a claim upon which relief can be granted.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Steven V. Wilson, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On June 27, 2007, plaintiff Dennis Hollis, a state inmate proceeding pro se and in forma pauperis, filed a civil rights complaint under 42 U.S.C. § 1983 against defendants James E. Tilton, Secretary of the California Department of Corrections and Rehabilitation ("CDCR") (erroneously sued as the "Director of Corrections"), John Marshall, warden of the California Men's Colony–East ("CMC–East"), Dr. ENU Hansen[1] and Dr. Ellen Greenman, physicians at CMC–East, and the hepatitis C committee at CMC–East, in their individual capacities,[2] claiming defendants have been deliberately indifferent to his serious medical needs by not providing appropriate medical treatment for his hepatitis C. Complaint at 3–17. More specifically, plaintiff alleges that on October 26, 2005, Dr. Hansen ordered tests for hepatitis on plaintiff, and those tests showed plaintiff had an elevated alanine aminotransferase ("ALT") level, indicative of hepatitis C. Complaint at 10, Exh. A at 5–6.[3] On March 22, 2006, Dr. Hansen diagnosed plaintiff with hepatitis C, genotype 1b, with a low ALT level. Complaint, Exh. A at 8. Dr. Hansen gave plaintiff a hepatitis C packet and discussed the disease with him. *Id.* On April 11, 2006, Dr. Hansen rechecked plaintiff's ALT levels, which were normal, noted plaintiff's hepatitis C was stable and under good control, and ordered plaintiff receive a hepatitis B vaccination and have his ALT levels checked twice a year. Complaint, Exh. A at 7. Subsequently, in November 2006, laboratory results provided to Dr. Rees showed plaintiff was positive for chronic hepatitis C; however, plaintiff alleges Dr. Rees denied him treatment, stating plaintiff did not meet the criteria for treatment and it was too expensive to provide treatment to

---

1. Plaintiff's complaint alleges he has received treatment from two physicians named Hansen: Dr. Stephen Hansen, who is not a defendant in this action, and Dr. [FNU] Hansen, who is a defendant. *See* Complaint at 9–10.

2. Initially, plaintiff has not complied with Rule 10(a), which requires the plaintiff name each defendant in both the caption and body of the complaint. To the contrary, plaintiff has named B. Rees, M.D., as a defendant in the body of the complaint, but not identified him as a defendant in the caption of the complaint. Complaint at 1, 9.

3. "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez,* 942 F.2d 617, 625 n. 1 (9th Cir.1991) (citations and internal *punctuation omitted); Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), cert. denied, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987); *see also Cooper v. Pickett,* 137 F.3d 616, 622–23 (9th Cir.1998) (material properly submitted as part of a complaint may be considered on a motion to dismiss).

every inmate who requested it. Complaint at 10–11, Exh. A at 22. On January 11, 2007, Dr. Rees noted plaintiff's request for hepatitis C treatment was denied because he was less than 45 years old and his ALT was less than 2 units per liter. Complaint, Exh. A at 22. As such, plaintiff alleges he has not had the medical treatment he needs, including a liver biopsy and pegylated interferon and ribavirin treatment. Complaint at 11.

Plaintiff alleges he filed a grievance about his medical care, which was denied by defendant Dr. Greenman, who stated:

> Treatment of Hepatitis–C is never urgent, the therapy has significant morbidity; therapy is not universally effective, the long-term prognosis of patients with Hepatitis–C is unpredictable but the majority of patients do well without therapy. If repeated blood tests show the liver is functioning differently than normal, a liver biopsy may be performed. It was determined by your [physician] your disease has not progressed to meet treatment criteria, you do not qualify for treatment of Hepatitis–C in the CDCR. Your [physician] will continue to monitor your disease through laboratory tests and will keep you apprised of your status. Your request for Hepatitis–C treatment is denied.

Complaint, Exh. A at 3. The plaintiff appealed this decision, and on May 14, 2007, his appeal was denied. Complaint, Exh. A at 1, 2–2a.

The plaintiff also alleges defendants Tilton, Marshall, Dr. Greenman, and the hepatitis C committee are responsible for promulgating the policies regarding the medical care of hepatitis C inmates, Complaint at 6–8, 14, 16–17, and defendants Dr. Greenman and the hepatitis C committee hired unqualified physicians to provide medical care and failed to adequately train staff. Complaint at 14, 16. The plaintiff seeks "injunctive relief in the form of proper medical diagnostic testing and treatment," damages, and other just and proper relief. Complaint at 18.

## II

On September 21, 2007, defendants filed a motion to dismiss plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and on November 29, 2007, plaintiff filed an opposition. Defendants filed a reply on December 10, 2007.

## DISCUSSION

### III

 A complaint should be dismissed only if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In considering dismissal, the Court must accept the factual allegations of the complaint as true. *Erickson v. Pardus,* —— U.S. ——, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam); *Albright v. Oliver,* 510 U.S. 266, 267, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994). The Court must also construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Berg v. Popham,* 412 F.3d 1122, 1125 (9th Cir. 2005). Moreover, pro se pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. *Erickson,* 127 S.Ct. at 2200; *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam).

### IV

 Prison officials and physicians violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference

to an inmate's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 302, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991); *Carlson v. Green*, 446 U.S. 14, 19, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Deliberate indifference exists when a prison official knows an inmate faces a substantial risk of serious harm to his health and fails to take reasonable measures to abate the risk. *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994); *Toguchi v. Soon Hwang Chung*, 391 F.3d 1051, 1058 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of harm exists,' but that person 'must also draw the inference.' " *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979). " 'If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.' " *Toguchi*, 391 F.3d at 1057 (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003)).

 Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment or by the manner in which prison physicians provide medical care. *Gamble*, 429 U.S. at 104–05, 97 S.Ct. at 291; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). In either case, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. *Gamble*, 429 U.S. at 105–06, 97 S.Ct. at 292; *Toguchi*, 391 F.3d at 1057; *Lopez*, 203 F.3d at 1131. Similarly, mere delay in providing an inmate with medical treatment, without more, does not amount to a constitutional violation. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.1992), *overruled on other grounds by, WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc); *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) (per curiam).

██ "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin*, 974 F.2d at 1059; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir.1994). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.' " *Lopez*, 203 F.3d at 1131 (quoting *McGuckin*, 974 F.2d at 1059–60).

## A. Drs. Hansen, Rees, and Greenman:

The plaintiff alleges, and the medical records attached to the complaint show, Drs. Hansen and Rees treated plaintiff's hepatitis C [4] while plaintiff was incarcerat-

---

4. According to the Eighth Circuit:

The virus causing Hepatitis C ["HCV"] was identified a little more than ten years ago.

ed at CMC–East. Specifically, these physicians ordered and obtained laboratory testing to determine plaintiff's hepatitis C genotype [5] and ALT levels,[6] provided information to plaintiff about his disease, and monitored plaintiff's ALT levels throughout his treatment. Further, these physicians exercised their medical judgment and determined plaintiff did not require a liver biopsy or interferon treatment [7] because of his age and because his ALT levels were stable and under good control. *See, e.g., Kane v. Winn*, 319 F.Supp.2d 162, 171 (D.Mass.2004) ("[A]ntiviral treatment is not routinely recommended for patients with normal ALT activity.").

Similarly, as part of the administrative appeal process, Dr. Greenman reviewed plaintiff's medical records and denied his request for additional hepatitis C treatment for the same reasons, and determined instead that plaintiff should continue to be monitored through laboratory testing.

■ Here, plaintiff's complaint is that Drs. Hansen, Rees, and Greenman failed to authorize a liver biopsy for him and failed to provide him with pegylated interferon and ribavirin treatment. However, plaintiff's claims constitute nothing more than "[a] difference of opinion" about his medical treatment that "does not amount

---

HCV primarily attacks the liver. More than half of those infected develop chronic liver inflammation and after many years of progressive deterioration some develop cirrhosis and end-stage liver disease, which can be fatal. A well-respected study found that, in the twenty-five years following initial infection, twenty percent of those exposed to HCV develop cirrhosis and three to five percent develop fatal complications such as liver cancer. About forty percent of Americans infected with HCV reside in correctional institutions.

*Bender v. Regier*, 385 F.3d 1133, 1134–35 (8th Cir.2004) (citation omitted); *see also* Cal. Health & Safety Code § 122405(d) ("Studies ... indicate that 39.4 percent of male inmates and 54.5 percent of female inmates in California correctional facilities have hepatitis C, 26 times higher than the general population.").

5. "Genotype refers to the genetic make-up of an organism or a virus. There are at least 6 distinct HCV genotypes identified. Genotype 1 is the most common genotype seen in the united States." Center for Disease Control and Prevention, Frequently Asked Questions About Hepatitis C, (http://www.cdc.gov/ncidod/ diseases/hepatitis/c/faq.htm) (last visited March 5, 2008).

6. "[T]he levels of a liver enzyme known as ALT ... indicates liver cell damage." *Bender*, 385 F.3d at 1136.

7. In *Bender*, the Eighth Circuit discussed interferon treatment for hepatitis C, noting:

[s]ynthetic interferon was released to the market some ten years ago. Until then, no treatment for the Hepatitis C virus existed. By January 2002, a more effective interferon treatment was available, involving a combination of pegylated interferon (interferon with polyethylene glycol) and ribavarin. Interferon treatment has serious potential side-effects, including nausea, anemia, depression, and decomposition of the liver. Its success rate is relatively low–15–30% for regular interferon and 40–50% for pegylated interferon treatment. The selection of patients for interferon treatment is highly individualized and depends upon many factors. Treatment is not appropriate for patients with advanced liver problems such as cirrhosis. **Treatment for patients with mild liver problems may be safely deferred.** Suitability for treatment is determined by measuring the degree of liver inflammation and fibrosis through a liver biopsy. However, even if the appropriate threshold levels of inflammation and fibrosis are present, treatment may be inappropriate if the patient is too young or too old, had a previous organ transplant, or suffers from depression, other mental health problems, heart disease, or untreated chemical dependency. Pegylated interferon treatment involves a series of injections for six months to a year at a cost of $2,000 per month.

*Bender*, 385 F.3d at 1135 (emphasis added).

to a deliberate indifference to [plaintiff's] serious medical needs." *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989); *Toguchi,* 391 F.3d at 1051; *see also Dotson v. Wilkinson,* 477 F.Supp.2d 838, 849 (N.D.Ohio 2007) ("[Plaintiff's] difference in opinion with prison medical personnel regarding the appropriate diagnoses and treatment for his Hepatitis C are not enough to state a deliberate indifference Claim."); *Clarke v. Blais,* 473 F.Supp.2d 124, 125–26 & n. 4 (D.Me.2007) (inmate's claims against jail's medical services provider for failure to treat inmate's hepatitis C with anti-viral therapy "boil down to [a] disagreement with the chosen course of treatment, and that is not the basis for a constitutional claim"). As such, this Court must grant defendants' motion to dismiss plaintiff's complaint against defendants Drs. Hansen, Rees and Greenman for failure to state a claim upon which relief can be granted.

### B. Defendants Tilton, Marshall, Dr. Greenman, and the Hepatitis C Committee:

 Vicarious liability does not apply to supervisorial personnel in a civil rights action. *Graves v. City of Coeur D'Alene,* 339 F.3d 828, 848 (9th Cir.2003); *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). Rather, a supervisor may be liable only if he or she is personally involved in the constitutional deprivation, or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jones v. Williams,* 297 F.3d 930, 937 (9th Cir.2002); *MacKinney v. Nielsen,* 69 F.3d 1002, 1008 (9th Cir.1995). A sufficient causal connection may be established by showing the supervisor set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the injury. *Graves,* 339 F.3d at 848; *Redman,* 942 F.2d at 1447. A supervisor also may be liable for a constitutional violation by a subordinate if the supervisor knew of the violation and failed to prevent it. *Harris v. Roderick,* 126 F.3d 1189, 1204 (9th Cir. 1997), cert. denied sub nom., *Smith v. Harris,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Finally, a supervisor may be liable if the alleged deprivation resulted from a failure to properly train or supervise personnel, or from an official policy or custom for which the supervisor was responsible. *Watkins v. City of Oakland, California,* 145 F.3d 1087, 1093 (9th Cir.1998); *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680 (9th Cir.1984).

 Here, plaintiff complains defendants Tilton, Marshall, Dr. Greenman and the hepatitis C committee are supervisory personnel responsible for promulgating the policies affecting the medical care of inmates, and Dr. Greenman and the hepatitis C committee hired unqualified people to provide inmates medical care and failed to adequately train staff. However, since plaintiff has not set forth a cognizable Section 1983 claim against any individual defendant, he has failed a fortiori to set forth a viable claim against defendants Tilton, Marshall, Greenman or the hepatitis C committee in their supervisory capacities.[8] *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (per curiam); *Long v. City & County of Honolulu,* 511 F.3d 901, 907 (9th

---

**8.** Having concluded plaintiff has failed to state a claim for which relief can be granted, this Court need not address defendants' alternate argument that they are entitled to quali-fied immunity. *Hart v. Parks,* 450 F.3d 1059, 1070 (9th Cir.2006); *Tatum v. City & County of San Francisco,* 441 F.3d 1090, 1100 n. 4 (9th Cir.2006).

Cir.2007); *Bias v. Moynihan,* 508 F.3d 1212, 1222–23 (9th Cir.2007). As such, this Court must grant defendants' motion to dismiss plaintiff's complaint against defendants Tilton, Marshall, Dr. Greenman and the hepatitis C committee for failure to state a claim upon which relief can be granted.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) granting defendants' motion to dismiss the complaint and action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and entering Judgment accordingly.