JON S. TIGAR, United States District Judge
Plaintiff, a California prisoner incarcerated at San Quentin State Prison ("SQSP"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that in 2014 and 2015, defendant Dr. Leighton, his primary care provider at *1071 SQSP, failed to properly treat plaintiff's back, knee, and shoulder pain, and that defendants Dr. Tootell, J. Lewis, and Dr. Pratt denied plaintiff's inmate appeals. The Court found that, liberally construed, plaintiff's first amended complaint ("FAC"), the operative complaint herein, states a cognizable claim for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.
Now before the Court is defendant's motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. For the reasons set forth below, the Court will grant the motion.
FACTUAL BACKGROUND[1]
Plaintiff suffers from pain in his lower back, right knee, and right shoulder. FAC at 6.[2] He has been diagnosed with minimal degenerative disk disease in his lower back, as well as a tear in the medial meniscus of his right knee and right shoulder bursitis. Id. at 6, 37-38. In 2007, he was referred to a pain management program by an orthopedic specialist, and over the next several years, he received steroid injections and various pain medications including morphine and ibuprofen. Id. at 13; Leighton Decl. ¶¶ 7-60, Ex. A at 1-103. On October 25, 2010, an orthopedist did not recommend any surgery. Leighton Decl. at ¶ 30, Ex. A at 43. Dr. Leighton was plaintiff's primary care physician by August 31, 2012, and she observed plaintiff for more than a year before making the medical decision on February 28, 2014 to taper down, and eventually discontinue, his prescription for morphine. Leighton Decl. ¶¶ 45, 48, 52, 54, 56-61, 63, Ex. A at 69-70, 79, 83-84, 86-87, 93-105, 109-110.
A. Medical Treatment During the 2014-2015 Time Frame Complained of in the FAC
On February 11, 2014, Dr. Leighton saw plaintiff and noted that he was scheduled for a back pain injection, which he received on February 18, 2014. Leighton Decl. ¶¶ 61-62, Ex. A at 104-08. By this point, Schultz's morphine prescription had not yet been tapered. Id. He was taking 180 mg. per day of morphine. Id. at ¶¶ 31, 63, Ex. A at 109-10. This was a high dose, and while he was on this high dose, plaintiff exhibited several adverse effects, including physical dependence, hyperesthesia (i.e., an increased sensitivity to pain), and constipation. Id. at ¶¶ 31, 42, 70, 74, 87, 89, 116, Ex. A at 65, 109-10, 160-162, 164; see also Pratt Decl. ¶¶ 16-17; Tootell Decl. ¶ 11; Barnett Decl. ¶ 18-20.
On February 28, 2014, Dr. Leighton saw plaintiff, examined him, and noted her plan to taper his morphine dose because "it did not appear that [plaintiff] needed to be on such a high dose of morphine, it did not appear to help him, and it was probably harmful overall."Id. at ¶ 63. See also Ex. A at 109-10. She noted that plaintiff agreed to taper down by 15 mg. every two weeks. Id. Dr. Leighton continued ibuprofen, and noted that she would offer plaintiff amitriptyline medication (which can be an effective pain-management treatment for neuropathic pain) at the next appointment to help with any neuropathic pain, if plaintiff felt the need. Id.
On April 11, 2014, Dr. Leighton saw plaintiff, froze the morphine taper so that he could work on his back exercise program, gave him instruction on exercises for stretching and strengthening his lower *1072 back, and continued the ibuprofen. Id. at ¶ 64, Ex. A at 111-13.
On June 6, 2014, Dr. Leighton saw plaintiff and observed that he looked significantly healthier and moved significantly better than he had on prior visits. Id. at ¶ 65, Ex. A at 114-16. She noted that he was in no acute distress, instructed plaintiff on stretching and strengthening exercises, and continued the ibuprofen and his current morphine dose, though her plan was to significantly taper down, and probably to eventually discontinue, the morphine. Id.
On July 22, 2014, Dr. Leighton saw plaintiff and noted that he was "in no acute distress." Id. at ¶ 66. She further tapered the morphine dose, continued the ibuprofen, and referred plaintiff for a pain injection for his back pain. Id., Ex. A at 117-20. Dr. Leighton noted that plaintiff had an MRI of his lower back from 2010 showing minimal degenerative changes, which were not likely to be responsible for any radiating pain, and that plaintiff did not report radiating pain. Id.
Medical providers in August 2014 saw plaintiff twice regarding back pain, and on September 2, 2014, plaintiff had a consultation with a neurosurgeon, who noted no lower-extremity radiating pain and normal strength and sensation in the lower extremities. Id. at ¶¶ 67-70, Ex. A at 121-29. Dr. Leighton thought the pain injection would happen at that appointment, but it did not, so on September 11, 2014, she re-referred plaintiff for a corticosteroid injection, explained that plaintiff had an adverse reaction to morphine causing him to be hyperesthetic,[3] and noted that he appeared more mobile and in less pain since the morphine taper began. Id. In October 2014 and again in December 2014, a medical provider saw plaintiff to discuss his back pain, and shortly thereafter, on December 17, 2014 plaintiff received a pain injection. Id. at ¶¶ 72-73, Ex. A at 135-37.
On December 24, 2014, Dr. Leighton saw plaintiff, continued the ibuprofen and the morphine taper, and noted that plaintiff only started complaining about his knee and shoulder when she told him about the morphine-dosage reduction. Id. at ¶ 74, Ex. A at 138-39. She referred to her prior note from September 11, 2014, discussing how morphine was causing hyperesthesia, and as a result was making his pain worse. Id. She noted her plan to consider further morphine reduction because he had no radiologic or functional limitations justifying ongoing opiate therapy. Id. Plaintiff reported some improvement in his back pain after the injection. Id.
On February 11, 2015, Dr. Leighton saw plaintiff, who reported pain. Dr. Leighton observed that he appeared fine, and that his complaints seemed far out of proportion to what would be expected from his x-rays and his neurosurgery evaluation. Id. at ¶ 75, Ex. A at 140-44. She continued the morphine taper, continued the ibuprofen, referred him for another corticosteroid injection to treat his back pain, and referred him to physical therapy for evaluation and work on a home exercise program. Id.
On March 5, 2015, plaintiff received physical therapy treatment, and shortly thereafter admitted that it afforded some relief. Id. at ¶¶ 77-78, Ex. A at 147-48. Plaintiff acknowledged he was receiving non-narcotic medication, physical therapy, TENS (Transcutaneous Electrical Nerve Stimulation ) treatment, and exercise for his pain. Id. He received three additional physical therapy treatment sessions in March of 2015, and at the March 25 session, *1073 plaintiff stated that he was doing better and feeling good. Id. at ¶¶ 79-81, Ex. A at 149-51. The physical therapist noted that plaintiff was highly functional and did not show signs of any pain, and instructed plaintiff to continue the use of his home exercise program. Id.
On March 26, 2015, Dr. Leighton saw plaintiff and noted that he reported horrible pain, though he looked much better and healthier than he had looked three months earlier, and his pain did not appear severe. Id. at ¶ 82, Ex. A at 152-54. She continued the ibuprofen, referred plaintiff for a TENS unit because plaintiff stated it provided him relief, and noted her plan to continue the morphine taper and eventually discontinue the morphine on April 22, 2015. Id.
In May 2015, plaintiff was instructed in deep breathing and altered focus to employ imagery for pain control. Id. at ¶¶ 90-91, Ex. A at 165-66. On June 28, 2015, he admitted that pain and stiffness were "not so bad" and that they were "better with the exercises." Id. at ¶ 94, Ex. A at 169. On July 5, 2015, he admitted that the exercises helped. Id. at ¶ 95, Ex. A at 170. On July 9, 2015, plaintiff reported that his back pain was gradually improving with use of the TENS unit, stretching, and exercising. Id. at ¶ 96, Ex. A at 171.
On August 19, 2015, Dr. Leighton saw plaintiff, noted that he had been off opiate medication for six months, and observed that he looked like a new person, looking much better and moving much more normally. Id. at ¶ 98, Ex. A at 176-77. Plaintiff complained of pain in his right knee, and Dr. Leighton referred him to physical therapy. Id. She also continued the ibuprofen and noted that plaintiff was going to get a back-pain injection with Dr. Tarasenko of the Advanced Pain Management Institute. Id. Plaintiff received the pain injection on September 4, 2015, and Dr. Tarasenko noted that plaintiff was in no distress, had a normal gait, and was able to complete activities of daily living. Id. at ¶ 99, Ex. A at 179-83.
On September 17, 2015, Dr. Leighton continued the ibuprofen and referred plaintiff for an injection when he complained about pain, even though he was walking and talking normally and did not appear to be in pain. Id. at ¶ 101, Ex. A at 185-86. On October 22, 2015, a medical professional saw and examined him regarding his back pain and pain-injection status. Id. at ¶ 103, Ex. A at 193-96.
On October 30, 2015, plaintiff saw Dr. Tarasenko and received a corticosteroid injection. Id. at ¶ 105, Ex. A at 200-04. After this injection, on multiple occasions, plaintiff reported that his pain had improved. Id. at ¶¶ 106-09, Ex. A at 205-07, 214. On November 12, 2015, plaintiff had an appointment with his new primary care physician, Dr. Smith, who noted that plaintiff was in no acute distress and understood that the medical department was not going to restart the opiates. Id. at ¶ 108, Ex. A at 208-10. Plaintiff reported that the ibuprofen and the injection helped with the pain, and that his pain had not changed significantly since coming off the opiates. Id.
B. Plaintiff's Health-Care Appeal
On February 24, 2015, plaintiff submitted a health-care appeal (CDCR Form 602 and 602-A), Number SQ HC 15039961, complaining that Dr. Leighton was denying him medical treatment by reducing pain medications that he had been receiving for more than seven years. Robinson Decl. ¶ 8, Ex. B at 4, 6. The relief portion of the appeal included plaintiff's request for a portable TENS unit, his request to keep surgery as an option, his request to be removed from Dr. Leighton's care, his request to have his morphine medication restored, and his request for a private consultation with an outside doctor. Id.
*1074 The appeal was reviewed at the first level and partially granted on March 24, 2015 by Dr. Pratt. Robinson Decl, Ex. B at 8-9. Specifically, Dr. Pratt granted plaintiff's request for an outside consultation and referred plaintiff to his primary care provider to discuss a TENS unit. See id. The appeal was reviewed at the second level and was partially granted on the same issues on May 12, 2015 by Dr. Tootell. Robinson Decl, Ex. B at 10-12. The appeal was reviewed at the third and final level and was denied on August 31, 2015 by J. Lewis, Deputy Director of Policy and Risk Management Services. Robinson Decl, Ex. B at 1-3. J. Lewis noted that after review, no further intervention was deemed necessary. See id.
DISCUSSION
A. Standard of Review
Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.
A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " See id. at 324, 106 S.Ct. 2548 (citing Fed. R. Civ. P. 56(e) ).
For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).
A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, the Court considers plaintiff's verified FAC, dkt. no. 26, in evaluating the motion for summary judgment.
B. Deliberate Indifference to Serious Medical Needs
Deliberate indifference to a serious medical need violates the Eighth *1075 Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104, 97 S.Ct. 285 ).
A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002), overruled on other grounds, Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016). Mere negligence, or even gross negligence, is not enough. Farmer, 511 U.S. at 835-36 & n.4, 114 S.Ct. 1970.
A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. McGuckin, 974 F.2d at 1059. Nor does "a difference of opinion between a prisoner patient and prison medical authorities regarding treatment" amount to deliberate indifference. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Consequently, a plaintiff's opinion that medical treatment was unduly delayed does not, without more, state a claim of deliberate indifference. Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) ; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837, 114 S.Ct. 1970 ).
C. Analysis
The Court assumes for purposes of this motion, and defendants do not dispute, that plaintiff has a serious medical need. The record, however, amply demonstrates that Dr. Leighton provided plaintiff adequate care. Dr. Leighton, along with other physicians, examined plaintiff on multiple occasions and provided him treatment for his pain and other health issues. In particular, the record shows that, for the period encompassing plaintiff's complaint - specifically 2014-2015 - Dr. Leighton treated plaintiff on at least eleven occasions. During this time, Dr. Leighton evaluated plaintiff's condition, created a pain treatment plan, prescribed non-narcotic medication, prescribed TENS treatment, approved plaintiff for injections for his back pain, instructed plaintiff on exercises and proper care for his knee, shoulder and back, and referred plaintiff for physical therapy and to pain specialists. The undisputed evidence demonstrates that Dr. Leighton continuously assessed plaintiff's symptoms and recommended *1076 treatment according to his clinical presentation.
At the crux of plaintiff's complaint is his contention that Dr. Leighton acted with deliberate indifference when she decided to taper plaintiff off of morphine. However, the record shows that Dr. Leighton observed plaintiff for well over a year before making the medical decision to taper down his prescription for morphine. Leighton Decl. ¶¶ 45, 48, 52, 54, 56-61, 63, Ex. A at 69-70, 79, 83-84, 86-87, 93-105, 109-110. Dr. Leighton believed that morphine was not medically advised and that plaintiff would have less pain once he was completely off morphine. See Leighton Decl. ¶¶ 70, 114-35, Ex. A at 129.
Further, the record shows that Dr. Leighton conducted the taper gradually. Specifically, she tapered plaintiff's dosage down to a complete discontinuance over the course of more than thirteen months. See id. at ¶ 63-86, Ex. A at 109-59. This was an exceedingly cautious approach, done to most effectively minimize the risks of adverse symptoms associated with opiate withdrawal. Id. at ¶ 127; see also Pratt Decl. ¶ 15. At one point, Dr. Leighton even paused the taper so that plaintiff could work on his back exercise program. Id. at ¶ 64, Ex. A at 111-12. Finally, both during and after the taper, Dr. Leighton consistently provided plaintiff with alternative pain management treatments.
Although the assertions in plaintiff's opposition are not entirely clear, it appears plaintiff bases his medical indifference claim on the following three arguments: 1) Dr. Leighton discontinued his opioid medication as part of a statewide cost-saving measure; (2) Dr. Leighton overstated plaintiff's history of illegal drug use in her medical notes; and (3) plaintiff experienced significant delays in receiving his back injections and physical therapy. These contentions are not persuasive.[4]
First, plaintiff argues that budget cuts were the "only logical conclusion" for the morphine taper. Pl's Opp'n at 12. But he provides no evidence to support this claim. To the contrary, defendants show that discontinuing morphine medication does not make sense from a cost-reduction perspective because opioid medication is significantly less expensive than the alternative treatments of physical therapy, injections, and neurosurgical consultation, all of which plaintiff received. Leighton Decl. ¶ 134; Pratt Decl. ¶ 18; Barnett Decl. ¶ 24.
Second, regarding plaintiff's history of illegal drug use, plaintiff contends that he never tested positive for illegal substances during his twenty years in prison. Pl's Opp'n at 4. Plaintiff's opposition is unverified, and he provides no evidence to support this contention. Plaintiff does not dispute a May 14, 2015 medical record from a different health provider setting forth his illegal drug use "relapse" in prison. Leighton Decl. Ex. A at 164. Nor does he dispute his Central File records setting forth drug use. Ross Decl. Ex. C at 23, 26-28. In any event, even accepting as true plaintiff's assertion that Dr. Leighton overstated his drug history, this does not create a material dispute. While Dr. Leighton noted plaintiff's history of illegal drug use in her medical notes, this was only one of several factors she considered in deciding to discontinue plaintiff's morphine prescription, and it was never the primary consideration. See Leighton Decl. ¶¶ 61-104.
*1077 Third, plaintiff argues that, due to delays, Dr. Leighton did not follow through on her plan for plaintiff to have a pain injection before the morphine taper began. Pl's Opp'n at 7-8. However, the evidence shows that it was on December 10, 2013 when Dr. Leighton indicated her plan to give plaintiff an injection prior to the morphine taper. Leighton Decl. ¶ 60, Ex, A at 101-02. And the evidence shows that she followed through on this plan. Id. at ¶¶ 62-63, Ex. A at 106-10 (showing plaintiff received a pain injection on February 18, 2014, and the morphine taper began on February 28, 2014). Finally, the evidence shows that both during and after the morphine taper, Dr. Leighton continued the pain-injection treatment. Id. at ¶¶ 66, 69-70, 73, 75, 97, 99, 101, 105, Ex. A at 117-18, 120, 126-30, 136-37, 140-41, 143, 172-75, 179-83, 185-88, 200-04. Plaintiff appears to blame delays in his physical therapy appointments on prison bureaucracy, not Dr. Leighton. See Pl's. Opp'n at 8-9 (noting double-booking and lack of medical escort). In any event, plaintiff does not dispute that Dr. Leighton referred him for physical therapy and that he ultimately received physical therapy along with a range of other pain treatments. See Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (doctor entitled to summary judgment where plaintiff presented no evidence that delays between plaintiff's initial visit, diagnosis and visit to the specialist were within the doctor's control or that the delay contributed to plaintiff's injuries).
The undisputed evidence supports Dr. Leighton's morphine-taper decision, and plaintiff fails to show the "sufficiently culpable state of mind" or "unnecessary and wanton" pain infliction necessary to sustain a deliberate-indifference claim. See Farmer, 511 U.S. at 834, 114 S.Ct. 1970. In sum, plaintiff has failed to raise a triable issue of fact that the care he received at the hands of Dr. Leighton amounted to deliberate indifference to plaintiff's serious medical needs.
The only allegations against defendants Dr. Tootell, J. Lewis, and Dr. Pratt are that they denied plaintiff's inmate grievance concerning the medical care he received from Dr. Leighton. As there was no constitutional violation in Dr. Leighton's treatment, these defendants cannot have been deliberately indifferent.
Finally, in support of the motion for summary judgment, defendants provide the independent medical opinion of Dr. Barnett. Dr. Barnett currently works as the chief medical consultant for the California Correctional Health-Care Services' Receiver's Office of Legal Affairs. Barnett Decl. ¶ 1. Dr. Barnett reviewed plaintiff's medical records and concluded that plaintiff received considerate and appropriate medical care and did not require morphine. Id. ¶¶ 5, 6, 12, 15, 17, 19-22. Defendants have also produced evidence of the growing medical consensus (as set forth by, among others, the Centers for Disease Control, the Surgeon General, the Department of Health and Human Services, industry articles, and the California Prison Health Care Services (CPHCS) pain-management guidelines) that opiate medication is dangerous and not advised for treating non-cancer chronic pain. Leighton Decl. ¶¶ 114-135, Exs. C-E; Pratt Decl. ¶ 16, Exs. B-C; Tootell Decl. ¶ 12; Barnett Decl. ¶ 25, Ex. D. Plaintiff produces no evidence to dispute these conclusions. His claim of a need for morphine, or any treatment other than the treatment he received, is based entirely on self-diagnosis and has no medical support. He thus fails to show any unmet medical need, much less deliberate indifference. Parlin v. Sodhi, No. 10-6120 VBF MRW, 2012 WL 5411710 at *5 (C.D. Cal. Aug. 8, 2012) ("At its core, Plaintiff's claim is that he did not receive the type of treatment and pain medication that he *1078 wanted when he wanted it. His preference for stronger medication - Vicodin, Tramadol, etc. - represents precisely the type of difference in medical opinion between a lay prisoner and medical personnel that is insufficient to establish a constitutional violation."); Womack v. Bakewell, No. 10-CV-2778 GEB DAD, 2013 WL 3148467, *9 (E.D. Cal. June 19, 2013) ("In this regard, plaintiff's disagreement with defendants about the type and strength of his pain medication does not reflect a conscious disregard of plaintiff's serious medical needs. In short, based on the record before the court, defendants' refusal to provide plaintiff with the pain medication he preferred did not rise to the level of deliberate indifference in violation of the Eighth Amendment.").[5]
Accordingly, defendants are entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548.
CONCLUSION
For the foregoing reasons, defendants' motion for summary judgment is GRANTED.
The Clerk shall enter judgment and close the file.
This order terminates Docket No. 43.
IT IS SO ORDERED.

The following facts, unless otherwise noted, are undisputed.

Page number citations for the FAC refer to those assigned by the Court's electronic filing system and are located at the top right-hand corner of each page.

Hyperthesia is an increased sensitivity to pain, and commonly presents as a side-effect to long-term opiate use. Leighton Decl. ¶ 70.

In his opposition, plaintiff also attempts to introduce new claims relating to medical treatment Dr. Leighton provided in 2008 and 2013. See Pl's Opp'n at 3, 7. The new claims are unverified and have no support in the record. In any event, plaintiff cannot rely on claims for relief that are not set forth in his FAC. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-94 (9th Cir. 2000) (a district court does not err when it refuses to entertain a new theory of liability raised for the first time at the summary judgment stage).

As the Court has not found a constitutional violation, defendants' arguments regarding qualified immunity and failure to exhaust state administrative remedies will not be addressed.